## Eliza A. Keerl *vs.* Henry Keerl, and others.

### *Jurisdiction—Alimony.*

Courts of Equity in this State have no jurisdiction to decree alimony, when both husband and wife are non-residents. To give jurisdiction in such cases, one or other of the parties must be domiciled in the State.

And the fact that the husband has property within the jurisdiction of the Court, will not authorize it to decree alimony where both parties reside out of the State.

Appeal from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellant on the 23d of February, 1867. It stated that the complainant and Henry Keerl were married in Baltimore, on the 8th of March, 1842, both at that time being citizens of the State of Maryland; and that they lived together as husband and wife in said city until 1845, when the said Henry deserted the complainant, and subsequently became a resident of Mil-

waukee, in the State of Wisconsin; and was at the filing of the bill a resident of Philadelphia. The bill then stated that the husband had no property in the State of Pennsylvania, and charged that about $4,000 was on deposit in the First National Bank of Baltimore, subject to the order of the Court, or was in the hands of Thomas M. Keerl, as trustee, arising from the sale of certain real property under the authority of the Superior Court of Baltimore City, in a cause pending in that Court; and that the said sum was the amount of money to which the husband would be entitled as appeared by the auditor's report, awaiting ratification. The bill prayed for alimony out of this money for the complainant and her children. The bill was subsequently amended, to show that the auditor's report had been ratified and confirmed. An injunction was issued to restrain the First National Bank and the trustee from paying the said money to the husband. Other proceedings were had not material to the issue involved in this appeal. The question on this appeal grows out of the plea of the husband to the jurisdiction of the Court, alleging that at the time the bill was filed, for three years before, and ever since, the complainant was a resident of the State of Pennsylvania, and domiciled therein; and that he was also for the same space domiciled in Pennsylvania, and there resided. The complainant filed a replication to the plea, alleging that at the time of filing the bill she was not a resident of Pennsylvania, but was a resident of the State of Maryland. A commission was issued, and testimony was taken upon the issue of residence as presented by the plea and replication.

Upon the hearing of this issue, the Court sustained the plea of the defendant and dismissed the bill. From the order allowing the plea, and dismissing the bill, the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*William Daniel* and *William S. Waters*, for the appellant.

The origin of the jurisdiction of the Chancery Court of Maryland in cases of alimony, grew out of the necessities of the case. There were no Ecclesiastical Courts, and the Courts of Equity assumed jurisdiction upon the ground that equity would give relief in all cases where the party had no other remedy.

The jurisdiction given by the Act of 1777, ch. 12, section 14, the Act of 1841, ch. 262, and the Code, Article 16, section 14, was merely affirmative and declaratory. Its intention was not to abridge the power of the Court on the subject theretofore exercised, but to affirm it.

Courts of Equity in Maryland will exercise jurisdiction in cases for alimony, proceeding in the same way in which they exercise jurisdiction over other subjects. The conditions of such jurisdiction are that the property sought to be affected by the decree or the defendant, is within the jurisdiction of the Court. In this case the property is in the possession of persons living within the jurisdiction of the Court, and within the reach of its process.

Property gives jurisdiction in this State in the case of an ordinary creditor, and that where all the parties, complainants and defendants are non-residents. *Code, Art.* 16, *secs.* 61, 88, 89, 97, 98, 105.

This is also the general doctrine of the common law. *Story's Conflict of Laws,* secs. 549, 550, *note,* (*Red. edition;*) 2 *Bishop on Mar. and Div.,* secs. 164, 165, (*latter part;*) 1 *Daniel's Chancery Practice,* 28; *Sanford vs. Sanford,* 5 *Day,* 533; *Thompson vs. Steamboat Morton,* 2 *Ohio State Rep.,* 26; *Feigley vs. Feigley,* 7 *Md.,* 537.

Alimony is an allowance out of the husband's estate for the maintenance of the wife; and where there is no estate there is no alimony. The wife in such a case is regarded as a creditor of the husband, and the suit as a suit for the collection of money, and the claim therefore bears a similar relation to property, and affects it in a similar manner to that

.of an ordinary creditor. *Feigley vs. Feigley,* 7 *Md.,* 537, 561, 563, &c.; 2 *Bishop on Mar. and Div., secs.* 201, 369; *Ricketts vs. Ricketts,* 4 *Gill,* 105, &c.; 2 *Story's Equity Jur., secs.* 1422, 1424, &c.

Property may be within the jurisdiction where the person is not. 2 *Bishop on Marriage and Divorce, sec.* 170, (*latter part.*)

Upon the question of the residence of the appellant, it was insisted on her behalf, that the facts disclosed under the commission clearly proved that she left Philadelphia in the early part of February, 1857, with the intention of residing in Maryland, under an engagement to teach music in the Patapsco Institute, at Ellicott city; that she actually entered upon such engagement, and gave a series of lessons on alternate days, and that her return to Philadelphia was occasioned by failing health and the difficulty of getting to the place of her employment, she residing in Baltimore, and thus compelled to travel to and from Ellicott city.

If she left Philadelphia with the intention of residing in Maryland, she acquired such a domicil as would qualify her to institute suit in a Maryland Court for alimony.

If a citizen of one State remove to another, with a *bona fide* intention of abandoning the former, and becoming a resident of the latter, he becomes immediately upon such removal a resident citizen of the latter, and this though there may be a floating intention of returning. *Lessee of Cooper vs. Galbraith,* 2 *Wash. Cir. Court Rep.,* 546; *Butler vs. Farnsworth,* 4 *Wash. Circuit Court Rep.,* 101; *Story's Con. Laws, sec.* 46, sub-secs. 6, 7, 8; *Ringgold vs. Barley,* 5 *Md.,* 186, 192, 193; 1 *Abbott's Nat. Dig.,* 460, (*title Citizen.*)

A change of residence with the avowed object of obtaining a right to sue in the United States Circuit Court, is not a fraud upon the law, provided the intention is to obtain a *bona fide* residence. *Cattell vs. Pacific Insurance Co.,* 1 *Paine, Circuit Court Rep.,* 594.

*Levin Gale,* for the appellees.

The alleged residence of the complainant in Baltimore was temporary, not occupying over four or five days according to some witnesses, and not over two or three weeks according to all. She immediately returned to Philadelphia, and has ever since resided there—and she never designed to abandon it.

The plea of the defendant was sufficient in law, because when *husband and wife are domiciled in the same State or sovereignty, no other State or sovereignty can determine anything with reference to their status,* whether as to alimony or divorce. Alimony, although not in this State considered as exclusively to be allowed when a divorce is applied for, is yet necessarily regulated by the same rules on this subject. *Code, Art.* 16, *secs.* 24–27; *Helms vs. Franciscus,* 2 *Bland,* 556–58 ; *Wallingsford vs. Wallingsford,* 6 *H. & J.,* 485 ; *Story's Conflict of Laws,* 230, *sec. a ;* 2 *Bishop on M. and D.,* 351–53 ; *Shelford on M. and D.,* (33 *L. L.,* 598,) 354.

GRASON, J., delivered the opinion of the Court.

The first question presented upon this appeal is, whether the Courts of Equity of this State have jurisdiction to decree alimony, if both husband and wife reside beyond the limits of the State. The Act of 1777, ch. 12, incorporated into the Code, Article 16, section 14, provides that "Courts of Equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the Ecclesiastical Courts there." The Ecclesiastical Courts of England only decreed alimony as an incident to divorce, and in such cases as would entitle the wife to a divorce *a mensa et thoro.* Alimony is defined to be "a maintenance afforded to the wife where her husband refuses to give it; or where from his improper conduct she is compelled to separate from him." 2 *Bishop on Mar. and Div.,* sec. 351, note 1; *Wallingsford vs. Wallingsford,* 6 *H. & J.,* 488. It is an incident of the mar-

riage and is a right entirely depending upon the status of the parties, and each State has the right to determine the status and condition of those who are domiciled within its limits. The Courts of this State have therefore no jurisdiction to pass upon and determine the relative duties of a husband and wife, both of whom are residents of another State; and the Legislature never intended to confer such power by the passage of the Act of 1777, nor by the adoption of the Code. To give jurisdiction to our Courts, in such cases, one or other of the parties must be domiciled within the State. It was contended that the Court below had jurisdiction in this case because the husband, Henry Keerl, had property within its jurisdiction. To adopt such a doctrine would result in great confusion, vexation, and, perhaps, injustice, for the wife might then institute a proceeding for alimony in every State where her husband might have property, and have it decreed to her in each State, and that too, as was very forcibly said by the learned Judge who decided this case below, when "the Court within whose jurisdiction the parties are domiciled, may, perhaps, have decreed a restitution of conjugal rights." There is no controversy as to the residence of Henry Keerl, all the proof showing that he had resided in Philadelphia for some years before, and at the time this suit was instituted; and from the proof in the record we are of opinion that the appellant was not domiciled in this State at the time she instituted the proceedings in this case. She had been living in Philadelphia for years, engaged in her profession of music teacher, sometimes leaving that city for short periods to give lessons, but invariably returning there so soon as her professional engagements were at an end. In February, 1867, her brother went to that city for her, and brought her to Baltimore with him, with the intention of procuring her a situation as music teacher at the Patapsco Institute. She did enter upon an engagement there, but soon gave it up and returned to Philadelphia, some of the witnesses say in four or five days after she had left it, and others say in two, three or four weeks

after. We think that the proof establishes the fact that she had no intention whatever of making her permanent home in Baltimore, or of changing her place of domicil, but that she left Philadelphia with the intention of returning there if she failed to make an arrangement with Mr. Archer to give lessons at his school, and at all events, so soon, if she did make an engagement there, as that engagement should terminate. It is true that it has been held by this Court that a temporary residence in this State was sufficient to constitute one a citizen for the purpose of suing or being sued; but this doctrine was applied to a residence for commercial purposes only, *Field vs. Adreon*, 7 *Md.*, 209, and never was extended to a case like the one now before us.

We find no error in the order of the Court below dismissing the bill of complaint, and it must be affirmed.

*Order affirmed.*

(Decided 10th February, 1871.)