## CAMPBELL *vs.* CAMPBELL.

1. Where a husband arriving in Savannah, in this state, abandons his wife, a bill by her for alimony will lie against him if found and served in the county of Chatham, and the chancellor, thus having jurisdiction of the case for permanent alimony, may grant temporary alimony as in cases of petitions for divorce.

2. Questions of continuance of the trial of applications for such temporary alimony are in the discretion of the chancellor, and that discretion was not abused in this case.

3. The sum allowed for counsel fees and support *pendente lite* are dependent on the circumstances of the parties and facts of the case; and whilst it is the better practice to specify the time for which the grant of supplies is decreed, it is no error not to do so, if the sum be not exorbitant or oppressive. It is much in the discretion of the chancellor to fix fees and the amount needed for support, and that discretion is not abused in this case.

Alimony. Husband and Wife. Jurisdiction. Continuance. Before Judge TOMKINS. Chatham Superior Court. December Term, 1881.

Mrs. Annie Louise Campbell, on behalf of herself and her child, five years of age, filed her bill in Chatham su-

perior court against her husband, William Campbell, to recover permanent alimony. She also applied for temporary alimony pending the case for permanent alimony. The bill and the testimony introduced by her in support of the application for temporary alimony made, in brief, the following case:

She was married to Campbell in 1875, and they lived together in New York until December 10th, 1881. For about a year previous to the filing of the bill, they had been on unpleasant terms. She had been in delicate health, and was advised by her physician to visit a warmer climate. Campbell had committed frequent acts of infidelity, and had been most cruel and unkind in his treatment of her. On December 10th, 1881, they left New York for Florida. During the passage on the steamer his conduct toward her was very unkind and harsh. On their arrival at Savannah, Georgia, he deserted her on board the steamer, concealed himself in the city, and endeavored to take the north-bound train and return to New York, leaving her and her child without money to shift for themselves. She made every effort to find him in the city, but without avail, and with her child and maid stopped at a hotel. Her husband, in the meantime, went to another hotel in the city and remained there without registering. Acting under legal advice, she swore out a warrant against him for abandoning the child, and he was arrested just as he boarded the train to leave. She afterwards learned that he had previously stated his intention to desert her. He is worth about five hundred thousand dollars. After being deserted, she determined to reside in Savannah.

Defendant filed a plea to the jurisdiction, and also demurred to the bill. The plea and demurrer were overruled. He moved for a continuance, alleging that he had been unable to prepare his case on account of having been under arrest, and because his counsel had been absent and occupied in other trials. The motion was overruled.

Defendant's answer and the testimony introduced by him made, in brief, the following case:

Campbell vs. Campbell.

Defendant was not guilty of any infidelity or improper conduct of any sort towards his wife. On the contrary, the plaintiff treated him with great unkindness—snubbing him in public, refusing to speak to him at times, and otherwise ill-using him. This misconduct on her part became so bad on the steamer between New York and Savannah, that he determined not to go on to Florida, but to return to New York. His original intention had been to accompany his wife to her destination in Florida and then return at once to New York, but after the occurrences on the steamer, he determined to return from Savannah, to avoid further annoyance from such scenes in traveling. He denied most positively any desertion or intent to desert his wife, and asserted that he had amply supplied her with money, had always paid her board bills, and had informed the proprietor of the hotel at which she stopped that he would pay the board bill due him. He still claimed his marital rights in respect to his wife, and denied that he had permanently deserted or abandoned her, or that he had concealed himself in Savannah.

The evidence as to the conduct of the parties towards each other was very conflicting. Testimony was also introduced as to counsel fees, which it is not necessary to set out here.

The judge passed an order requiring defendant to pay to plaintiff five hundred dollars on account of temporary alimony, and to pay into court five hundred dollars more, to be held subject to the order of the court for complainant's further support. Also, that defendant pay to complainant's attorneys five hundred dollars on account of fees, with leave to them to move for further fees during the progress of the case. To this judgment defendant excepted.

GARRARD & MELDRIM, for plaintiffs in error.

A. P. & S. B. ADAMS, for defendant.

JACKSON, Chief Justice.

The main position on which the able counsel for plaintiff in error rested his case, is the want of jurisdiction in the superior court of Chatham county. Of course if the court had no jurisdiction, the cornerstone of the entire proceeding sinks into nothing, and all built upon it falls with it. Had the chancellor jurisdiction?

The case made here is an application for temporary alimony, growing out of a bill filed for permanent alimony, and if the bill for permanent alimony did not lie for want of jurisdiction to render a decree thereon, the sap that passes from this trunk into the branch gives no vitality to the trunk itself, and of course can impart none to the branch.

The husband and wife came to Savannah *en route* to Jacksonville, Florida, and there the trouble between them originated or culminated, and she was abandoned by him, without fault, as she alleges and swears on her part, and without adequate means of support. Thus she was left and compelled to make Savannah her temporary home, and as her husband was not a citizen of Georgia, resident in any county of this State, no court in this State had jurisdiction to hear and determine any cause by anybody against him, unless the defendant could be caught and served therein. But as he was a non-resident, travelling through the state, any court of any county therein which could serve its process on him acquired jurisdiction of his person. Of the subject matter, of the question of support—of permanent alimony, and growing out of it, of temporary alimony—the judge of the superior court, sitting as chancellor, has the jurisdiction. Whilst temporary alimony, it is true, is but a branch of the greater suit for permanent alimony, yet, in cases like this at bar it is an essential branch. Indeed, in all cases where the wife is destitute of means to support herself and maintain her suit, the temporary alimony is of the

very essence of the whole suit, and unless it be granted, the rot in the branch, like the blight on the limb of the pear-tree, will communicate immediate decay and death to the entire case. The party must herself live that her suit may live, and she must have adequate counsel as well, that the suit may live. Money is the very sinew and muscle of the whole body of her case, and deserted and destitute, forsaken among strangers by her husband, if he be not compelled to furnish it, where shall she get it to sustain her own life and the life of her case? Code, §3080; supplement to Code, §§618, 648; Code, §§1737, 1744, 1745, 1746, 1747; 18 *Ga.*, 690. The case in the 18 *Ga.* is that of *Murphy vs. Winter & Co.*, and decides that "a citizen of another state, who is merely passing through this, resides as he passes, wherever he is;" and the constitution declares that "equity cases shall be tried in a county where a defendant resides, against whom substantial relief is prayed." Art. 6, Sec. 16, Par. 3, Sup. to Code, §648. The most substantial relief imaginable is prayed against this defendant; he is a citizen of another state; he was merely passing through this state and through Savannah, in the county of Chatham, when he was served, and the court of equity thereby acquired jurisdiction over his person, and had it of the subject matter, to-wit: the permanent alimony and the temporary alimony needful to enable the suitor to get her decree for that permanent support.

So that, without reference to the authorities cited elsewhere by the learned counsel on both sides, our own statutes, fundamental and ancillary, and the judgment of our own highest court, unanimously rendered and equivalent to a statute until reviewed and reversed, settle the point at issue beyond controversy.

And it ought to be the law. The nature of the claim, if it be a moneyed claim, is immaterial. Whether equitable or legal, it makes no difference. The non-resident, passing through the state, resides as to jurisdiction where

he is caught and served, and may be sued there at law or in equity as the one or the other court has jurisdiction of the subject matter. It ought to be the law, because the suitor having a just claim ought not to be sent out of the state for the justice he can receive in it. The roving defendant may settle down nowhere. In this case he was on his way to Florida, and seems to have tacked and turned towards New York. Shall the suitor follow him to Florida or back to New York? Or, should he again change his course, shall she be forced to follow wherever he may go until he settles? Especially is the application of the law absolutely necessary in a case like this. Is she to go to our poor-house and be maintained there at the expense of the people of Chatham county, or of the city of Savannah, when her husband is amply able to support her? Is he to be allowed to do what no citizen of Georgia could do—put her and his offspring by her upon a Georgia parish for support? The effect would be not to extend equal but superior rights to the citizen of another state. And more especially is the law wise in cases of temporary alimony. The need is urgent; the food necessary immediately; time is of the very essence of the demand; and if she try to follow the wanderer who abandons her among strangers, the attempt is hopeless, because she has no means to travel. We put the case strongly to show the necessity of jurisdiction, and not to decide that the facts at bar are as strong as the above language might be construed to imply.

Nor do we mean here to decide that the jurisdiction would attach in an application for divorce. There the policy of the law might be different, as the law itself may be. But policy as well as law is clear to the extent of showing jurisdiction for alimony in case of abandonment of a wife by her husband within this state, when he is a citizen of another. Nor do we decide whether under the act of 1870, codified in sections 1847 and 1748, a proceeding for temporary alimony would not lie independently of

any prayer for permanent alimony, in a case like this; because the scope and prayer of this bill embrace permanent alimony, and we make the case turn on its allegations.

2. In regard to continuance of the hearing for temporary alimony, the chancellor did not abuse his discretion, and with discretion on such points the law invests him.

3 So in regard to the disputed facts in the record, and the amount of temporary alimony, embracing the support of the wife and child and counsel fees to carry on the litigation, we cannot say that the chancellor abused that discretion with which the law clothes him. In such cases, the law well places his judgment on a high plane, and the settled rule of this court is never to lower that elevation, except when he himself does so by stepping off the legal platform and stooping below judicial fairness. We cannot see that in the judgment rendered and now reviewed, he he did not square himself by the rule the law prescribes. It may have been more exact to measure off the supplies allowed by inches of time, but as the entire allowance is temporary—only to extend until further order, and within the power of modification by the chancellor at any stage of the case, and not oppressive or exorbitant, having reference to the delay attendant upon litigation stubborn as this is likely to be—we cannot see that the omission so to divide the allowance by the week or month invalidates the judgment and demands a reversal.

Therefore the case is decided as in the syllabus at the head of this opinion is set out and approved by the court, and the judgment is affirmed.

Judgment affirmed.

Cited for plaintiff in error: Code, §1747; Acts of 1870, p. 413; Code, §1746; Cons. of 1798 and 1861; Cobb's Digest, 224; 25 *Ga.*, 473; Cons. of 1868, Art. 5, §12, par. 1; (Code, §5173); Cons. of 1877, Art. 6, §16, par. 1; 2 Bish. Marriage and Div., (5 Ed.) par. 117, 122, 121, 125, 129, 775,

783, 777, 361, 132, 141, 359; Story Conf. Laws, 230 *et seq.;* Code, §1736; 34 Md., 21–26; 1 Bouv. Law Dic., p. 15; 5 Cranch, 351; 1 *Kelly*, 8; 43 Pa., 464; Met. (Mass.) 478 *et seq.;* Code, §§1712, 1744; 2 Bouv., 513; 47 *Ga.*, 332; 49 *Ib.*, 378; 54 *Ib.*, 560; 39 *Ib.*, 53–55; 44 Pa., 216, 219; Code, §3869; 53 *Ga.*, 253.

For defendant: Code, §21; 30 *Ga.*, 440; 47 *Ib.*, 562; 2 Bish. on Mar. and Div. §§137, 142, 152, 150, 169, 170, 201, 205; 20 Ala., 629, 646–7; 37 Ala., 395; 9 Wall., 109; Code, §§1744, 1747; 1 Bish., §§738, 748; 2 Wait, 565; 31 *Ga.*, 634; 36 *Ib.*, 317; 1 Bish., 725, 732, 744; 36 *Ga.*, 318, 286; 41 *Ib.*, 46; 2 Wait, 594–6; 23 Am. R., 299; 2 Bish. 53, 55, 56, 57, 58, 63; 100 Mo., 150; 1 Bish., 719, note 2; 4 Dess., 574, 560; 22 *Ga.*, 31; 15 *Ib.*, 97; 38 *Ib.*, 670.