## POPE v. POPE.

No. 16555—Opinion Filed Jan. 12, 1926.

Rehearing Denied Feb. 23, 1926.

1. **Divorce—Appeal—Review of Evidence—Finding as to Jurisdictional Residence of Plaintiff.**

An action for divorce is one of equitable cognizance, and the finding of the trial court that the plaintiff had been a resident of Oklahoma for a year next before the filing of the petition is not conclusive upon appeal, but this court will consider all the evidence and weigh it to ascertain whether or not the judgment is against its weight, and if the judgment is clearly against its weight, then render or cause to be rendered such judgment as the trial court should have rendered, but if not clearly against its weight, then affirm the judgment.

2. **Divorce—Statutory Requirement as to Residence of Plaintiff.**

Under section 502, C. S. 1921, it must be made to appear in an action for divorce that plaintiff has been a resident in good faith of this state for one year next before the filing of the petition as a prerequisite to the court's jurisdiction to grant relief.

3. **Domicile—Wife's Domicile That of Husband.**

The domicile of a married woman, while she lives with her husband, either under guardianship or not, is the domicile of her husband; that is, her residence is merged into his.

4. **Divorce—Domicile a Question of Fact—Evidence—Appeal.**

The question of domicile in an action for divorce is one of fact to be determined from the evidence in the case. The controlling fact to be considered is the fact of intention, and to determine this fact the trial court, and this court on appeal, may take into consideration all the movements, transactions, and attending circumstances of the party or parties involved in the question.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Osage County; James J. Worten, Judge.

Action by Rhoda Pope against Troy Pope

for divorce. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilson, Murphey & Duncan, for plaintiff in error.

Hargis, Yarbrough & Williams and Widdows & McCoy, for defendant in error.

Opinion by THREADGILL, C. On August 18, 1924, this action was commenced by defendant in error, as plaintiff, against plaintiff in error, as defendant, to obtain a divorce and to restrain defendant from "in any manner interfering with her." The parties will be referred to as they appeared in the trial court.

The ground alleged in the petition was extreme cruelty. On September 18, 1924, plaintiff filed an amended petition, in which she alleged that she was a resident for more than one year of Osage county, and stated facts showing fraud and undue influence on the part of defendant and his brother, O. V. Pope, who was her step-father, in comsummating a marriage ceremony between her and defendant. She stated that she was a full-blood Osage Indian and in feeble health, and was induced by defendant and her step-father to go to Colorado for the summer of 1922, and the two brothers conspired together to get large sums of money from her; that she trusted her step-father and depended upon his counsel and advice to an unlimited degree. Upon these facts she asked for an annulment of the marriage. For a second cause of action, she states facts tending to show extreme cruelty on the part of the defendant to herself and her four children by her former husband; also facts tending to show that defendant had used her money and bought property in his name, and she asks for a divorce and for the money or the property bought with the money belonging to her. There was a demurrer to the amended petition by defendant, which was overruled. The court made an order requiring the defendant to deliver to plaintiff a certain Lincoln automobile.

On November 22, 1924, defendant filed his answer and cross-petition, in which he denies generally the allegations of the petition, and further states, in substance, that plaintiff is an incompetent, under guardianship, and the guardian should be made a party to the action; that he was married to plaintiff in June, 1924, but denies any conspiracy or undue influence in the matter. He states the marriage was in good faith and his conduct not subject to reproach by plaintiff; that his brother, who was step-father to plaintiff, assisted plaintiff and defendant in

buying a home in Colorado. That soon after he and plaintiff moved to Colorado, she became interested in her former husband, Ridge King, from whom she was recently divorced and who was soon thereafter convicted of a felony and sent to the penitentiary, and commenced to correspond with him, and had an understanding that as soon as he was released from prison she should marry him again. He further states that the guardian of plaintiff refused to put up any money to defray her expenses to Colorado when she was in delicate health, and he and his brother, O. V. Pope, borrowed $4,339.30, and put out $2,000 on a home for plaintiff in Colorado, and pledged their credit for other money, making in all a total of $7,283.30, for which defendant is personally liable. That plaintiff's health was greatly improved by her visit and stay in Colorado, and he and his brother were entitled to credit for it as a defense against her charges of fraud and conspiracy to take undue advantage of her. Upon these facts defendant asks that the relief asked for by plaintiff be denied, and that he be given judgment against her for the sum of $7,283.30. On December 4, 1924, plaintiff filed a reply to defendant's answer and cross-petition, consisting of a general denial, and further denies that she received any funds from the defendant to defray her expenses to spend the summer in Colorado. She denies any part in pledging the defendant's credit for $7,283.30, and further specifically denies the affirmative allegations of the answer and cross-petition. The cause was tried to the court on January 9, 1925, and resulted in a judgment in favor of the plaintiff for a divorce, from which the defendant prosecutes this appeal, and urges but one assignment of error to reverse the judgment, and that is, that the court was without jurisdiction to render judgment in the case for the reason that plaintiff had not been a resident of the state for a period of one year next preceding the filing of her petition. The defendant urges his contention under four propositions:

(1) The first is "The finding of the trial court that the plaintiff had been a resident of Oklahoma for a year is not conclusive upon appeal." This proposition is based upon the rule that, in actions of equitable cognizance, the Supreme Court will consider all the evidence and weigh it to ascertain if the judgment is clearly against its weight, and if the judgment is against its weight, then it is the duty of the court to render, or cause to be rendered, such judgment as the trial court should have rendered, but if not clearly against the weight of the evidence,

the judgment should be affirmed. Dotterer v. C., R. I. & P. Ry. Co., 78 Okla. 67, 188 Pac. 1055; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Orton v. Citizens State Bank, 99 Okla. 80, 225 Pac. 899; Keechi Oil & Gas Co. v. Smith., 81 Okla. 266, 198 Pac. 588; Gorman v. Carlock, 72 Okla. 104, 179 Pac. 38. It will be observed that an action for divorce is one of equitable cognizance and these cases furnish the correct rule as to the sufficiency of the evidence to support the judgment.

(2) Defendant's second proposition is that the matter of residence in a divorce action under the statutes of Oklahoma is jurisdictional.

Section 502, Comp. Stat. 1921, provides as follows:

"The plaintiff in an action for divorce must have been an actual resident, in good faith, of the state, for one year next preceding the filing of the petition, and a resident of the county in which the action is brought at the time the petition is filed."

The construction universally placed on similar statutes to this one by all the states holds that the requirement as to residence is jurisdictional. In 9 R. C. L. page 399, par. 195, page 402, par. 198, the general rule is stated as follows:

"The statutes generally require that the party applying for the divorce shall have resided in the state for a designated time prior to the filing of the bill or petition for a divorce: such provisions are regarded as mandatory, and no court has power to grant a decree of divorce until it affirmatively appears that the plaintiff has resided in the state as required by the statute."

Our statute was adopted from Oklahoma Territory, and the Supreme Court of said territory, in construing it, laid down the rule as follows:

"The plaintiff in an action for divorce must have been an actual resident in good faith of the territory for 90 days nexe preceding the filing of the petition, and a resident of the county in which the action is brought at the time the petition is filed. Such residence is a jurisdictional fact, that must be alleged and proven by the plaintiff, and must affirmatively appear in the record. Jurisdiction of the subject-matter cannot be acquired by waiver or consent. Not only the courts look at the matter of jurisdiction without the question being raised by the parties, but in every case they are bound to inquire whether the facts presented give jurisdiction." Beach v. Beach, 4 Okla. 360, 46 Pac. 514: see also, Irwin v. Irwin, 3 Okla. 188, 41 Pac. 369.

(3) Defendant's third proposition is that the residence or domicile of a married woman is that of her husband, and a long list of authorities is cited in support thereof. There is no question about this being the law, and it is so conceded by all the authorities. It may also be conceded that, under section 6592, Comp. Stat. 1921, the residence of a married woman under guardianship, while she lives with her husband, is the same as her husband's. Kersey v. McDougal, 79 Okla. 53, 191 Pac. 594.

(4) Defendant's fourth proposition is that the uncontradicted evidence shows that neither of the parties to this action had resided in Oklahoma for one year next preceding the filing of the petition. Under this proposition, defendant concedes that the meaning of the word "resident or residence," as used in section 502, Comp. Stat. 1921, is the same as "domiciled" or "domicile," citing many authorities and quoting the rule stated in 9 R. C. L., page 538, par. 2, as the universal rule. This rule is as follows:

"The term 'domicile' in its ordinary acceptance means a place where a person lives or has his home. In a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent home, and principal establishment, and to which place he has, whenever he is absent, the intention of returning. In a sense domicile is synonymous with home or residence, or 'the house of usual abode.'"

In Fidelity & Deposit Co. v. Sheahan, 37 Okla. 702, 133 Pac. 228, 47 L. R. A. (N. S.) 309, this court states as follows:

"There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term."

In the case of Jones v. Reser, 61 Okla. 46, 160 Pac. 58, the court in the second paragraph of the syllabus stated as follows:

"The term 'residence' means a settled or fixed abode of a character indicating permanency, at least for an indefinite time. It signifies a party's permanent home and principal establishment, to which, whenever he is absent, he has the intention of returning."

This court has held, in cases involving homestead rights, that the controlling fact to be considered is the intention of the person at the time it is claimed the homestead was established. Brattain v. Hite. 101 Okla. 174, 224 Pac. 501; Jacobson v. Kill, 94 Okla. 146, 221 Pac. 21.

In the case of Cornelison v. Blackwelder, 38 Okla. 1, 131 Pac. 701, the rule is stated as follows:

"The intention of a person as to the place of his residence is a question of fact, to be

determined by the verdict of the jury or the findings of the court, and such determination is conclusive upon appeal if there was any evidence reasonably tending to support it."

We must, therefore, look to the evidence to determine whether or not the defendant's domicile was in Boulder, Colo., where he claims it was at the time he and plaintiff were married, about the 17th of June, 1923. If his residence, as defined by the above authorities, was in Boulder, Colo., at the time of the marriage, it follows as a matter of law that plaintiff's residence was established there, and since she returned to Osage county in this state about two weeks after the marriage, she could not have a legal residence in this state for the purpose of this action at the time she filed her petition; on the other hand, if the defendant's residence was in this state before he and the plaintiff went to Colorado, in the summer of 1922, and he had no intention of making a permanent home for an indefinite time in Colorado, although he bought property there and although he contracted for and lived for a short time in an expensive residence, still his legal residence would be in the state from which he departed and to which he returned, after a temporary absence, and the plaintiff's legal residence would be the same as his, in this state.

We have read all the evidence in the somewhat voluminous record, and it would take considerable space and consume unnecessary time for us to discuss the facts and circumstances brought out by the witnesses as to the motives prompting the plaintiff and defendant in going out to the state of Colorado in the summer of 1922, as to the movements of the defendant in buying property in that state and the $20,000 residence in the city of Boulder, and the various trips made by both parties in going to that state and returning to this. Suffice it to say that it is reasonable from the evidence that the defendant and his brother, O. V. Pope, who was the step-father of plaintiff, intended, when they went out to Colorado for the health of plaintiff, that she should get a divorce from her husband, Ridge King, and marry the defendant as soon as the six months' limitation in such cases expired in this state. She was a wealthy member of the Osage Tribe of Indians and had four children, the oldest being about 11 years of age, by her husband, King; was about 40 years of age and in feeble health, and the defendant was a young man of the white race, but without much property, and yet desired to marry this woman and assume the responsibility of taking care of her and her four children by the other man. All of her property interests were in this state. She had a farm here and a house on it, with the right to return to it at any time she saw fit to live there. She had no property interests in the state of Colorado. The defendant bought a small tract of land at Sulphur Springs in Colorado and built two or three tourists' camp houses, and, a short time before he married the plaintiff, he contracted for the property with the chicken ranch attachment at Boulder. There was evidence tending to show that it was the intention of the parties, at the time the contract was made, that the same should be paid for by money obtained from the plaintiff, and it was suggested that the title be taken in her name, but the grantor refused to make this sort of contract because she was under guardianship as an incompetent, and there is evidence tending to show that the defendant and his brother made the contract for the property and signed the notes, but the property was never paid for and was abandoned shortly after the marriage, and the plaintiff and defendant returned to the state of Oklahoma and did not go back to occupy the home or live in that state. It is true, the facts that the defendant bought the property in Colorado and contracted for the residence at Boulder are circumstances tending to show that he intended to live there and make his home there, but there are other facts and circumstances in the case that are to be weighed against this intention. His father and mother lived in this state and his brothers lived here, and the woman he intended to marry at the time he went to Colorado had her home in Osage county in this state, and all of her property interests were there, and her mother and step-father lived there, and it was the one purpose of defendant and his brother, and maybe his brother's wife, mother of the plaintiff, who accompanied them, to go to Colorado in the summer of 1922, for the health of the plaintiff. The defendant assumed the responsibility of taking her out there and of looking after her and driving her around in her Lincoln automobile, and in assisting her in spending her money, and it appears that his business adventures were secondary to his business of courting this woman and assisting her in being restored to health. And then there are circumstances of the constant visits made by the defendant back to this state, during the year he was looking after the plaintiff and her health in Colorado. Then there is the circumstance of his giving up the property in Boulder as a residence and Colorado as the state of his

domicile as soon as he and the plaintiff returned to Oklahoma, two weeks after the marriage. The plaintiff testifies that she did not intend to make a permanent home in Colorado; that she never agreed to live in that state as her home; that the defendant promised to bring her back to live in Oklahoma, and after reading all of this evidence and weighing it as best we can, out of the presence of the parties and the witnesses, we are persuaded that the findings and judgment of the trial court are not against the weight of the evidence, and the judgment should therefore be affirmed.

By the Court: It is so ordered.