**ANDERSON et al. v. ANDERSON.**

No. 19803. Opinion Filed Sept. 24, 1929.

Rehearing Denied Nov. 26, 1929.

See, also, 131 Okla. 95, 267 Pac. 621.

George S. Ramsey, Potter & Potter, and Guy Sigler, for plaintiffs in error.

H. E. Ledbetter and Champion, Champion & Fischl, ofr defendant in error.

ANDREWS, J. The defendant in error was the plaintiff in the trial court and will be referred to as plaintiff herein. The plaintiffs in error were defendants in the trial court and will be referred to as defendants herein. Hoxie Anderson, one of the defendants in the trial court, was served by publication, but did not appear in the trial court and is not a party to this appeal. He will be referred to herein as Hoxie Anderson.

At the time of the marriage in 1920 of plaintiff and Hoxie Anderson she was a resident of New York City and he of Ardmore, Okla. After their marriage they resided at Ardmore until 1925, when they moved to California, where they have both been citizens and residents at all times since, and where their separation occurred in 1926.

At the time of the marriage Hoxie Anderson had very little property, his entire possessions consisting of two pieces of property producing little income and of little value.

After the marriage the defendant C. L. Anderson, who is the father of Hoxie Anderson, and of the defendants Wilmer Anderson and Charles Anderson, and the husband of Nettie H. Anderson, conveyed to Hoxie Anderson the property involved in this action. The instruments of conveyance show this beyond dispute.

During the continuance of the marriage relation the plaintiff had some $16,000 in funds and securities, all of which had been expended prior to the separation except $3,200, which was in the possession of Hoxie Anderson at the time of the separation. The evidence shows that no part of this money was used for the purchase of any of the property involved in this action.

The trial court found:

"That all of the property owned by the plaintiff, Elaine D. Anderson, in the preceding paragraph was converted and misappropriated and dissipated by the defendant Hoxie Anderson, or the greater portion thereof, or was used by the said Hoxie Anderson for the maintenance and support of himself and his said wife."

It is unnecessary for this court to discuss the conduct of the parties. It is sufficient to state that the evidence is such that a divorce might be granted the plaintiff in California, if the grounds for divorce in California are the same as in Oklahoma, of which there is no evidence.

After the separation, the plaintiff sued Hoxie Anderson in California for alimony and separate maintenance, and while that suit was pending she filed the present suit in the district court of Carter county, Okla. She then dismissed the California suit. Thereafter Hoxie Anderson filed a suit against her in California for divorce, and this plaintiff filed a cross-petition therein asking for divorce and alimony, which suit, according to the evidence, is pending.

Her petition in the case at bar alleged that she, her husband, Hoxie Anderson, his father, C. L. Anderson, his mother, Nettie H. Anderson, and his two brothers, Wilmer and Charles Anderson, are all residents of the state of California. The marriage and separation as hereinbefore set forth was alleged, acts of Hoxie Anderson during the married life and alleged to be the cause of the separation and grounds for divorce were set forth. It was therein alleged that plaintiff was without an income or means of support and by reason of her physical condition was unable to work and earn any money and is dependent upon the charity of her relatives; that Hoxie Anderson is not paying her anything for her support although able financially to support her; that she is in need of funds with which to purchase clothes and with which to live. There was a prayer for temporary alimony in the sum

of $10,000, $2,000 attorney fees, $500 expense money, and permanent alimony to the extent of an undivided one-half interest in the property described in the petition or its equivalent in money, the appointment of a receiver, establishment of a trust and other relief.

The petition described certain real estate in detail in Carter, Love, Stephens, and Jefferson counties and alleged that Hoxie Anderson "acquired the title, possession, and recorded title of all of the foregoing property and became the owner thereof, after he married plaintiff" all of which he owned at the time of the separation.

Service was had by publication. A receiver was appointed for the land, orders for temporary alimony, suit money, attorney's fees, and costs were made and other proceedings had.

Hoxie Anderson did not answer or appear in the cause. Defendants filed their answer, in which they alleged that they were residents of California; that Hoxie Anderson was a resident of California; that at the time of the institution of this suit and the appointment of a receiver the plaintiff had instituted and was prosecuting a suit in California for alimony and separate maintenance. It further alleged that Nettie H. Anderson, Charles Anderson, and Wilmer Anderson are the sole owners of the property described in the petition and have been in the exclusive possession of the same since February, 1925; that all the interest Hoxie Anderson ever had therein was sold and conveyed to them for a valuable consideration with the full knowledge and consent of the plaintiff.

At the conclusion of the trial the court rendered a judgment giving to the plaintiff all of the property described in the petition and some that was not described in the petition, affidavit for publication or publication notice, and all other property Hoxie Anderson held in his name of record at the time of the separation, for her alimony, maintenance, and support, from which order and judgment, after motion for new trial overruled, defendants appealed to this court.

There are many errors alleged, but inasmuch as this court is of the opinion that the judgment in this case is coram non judice and void, only the assignments of error pertaining thereto will be considered.

Our divorce statutes were taken from Kansas and we adopted the construction placed thereon by Johnson v. Johnson, 57

Kan. 343, 46 Pac. 700, that case having been decided in 1896.

Plaintiff, in her brief on the former appeal, said:

"By the adoption of the Kansas statutes into the state of Oklahoma, this court is bound by the interpretation placed thereon"

—with which statement we agree. In that brief plaintiff contended that we are bound by the Kansas opinion in Wohlfort v. Wohlfort, 225 Pac. 746, but, inasmuch as this case was not decided until 1924, the rule stated does not apply. Nor are we bound by the opinion of Osman v. Osman (Kan.) 121 Pac. 327, which refuses to follow Johnson v. Johnson, supra.

Under section 199, C. O. S. 1921, the actions therein named **must** be brought in the county in which the subject of the action is situated. This section is referred to because of the use of the word "must" therein as contradistinguished from the use of the word "may" in section 206, Id., which section provides that an action for divorce may be brought in the county of which the plaintiff is an actual resident at the time of the filing of the petition. The use of the word "may" in this latter section is advisable, for not all proceedings for divorce are required to be brought in the county of which the applicant is an actual resident. Under section 502, C. O. S. 1921, the plaintiff in a divorce action must have been a resident in good faith of the state for one year next preceding the filing of the petition and must be a resident of the county in which the action is brought at the time of the filing of the petition therein. Pope v. Pope, 116 Okla. 188, 243 Pac. 962. But this provision as to residence does not apply to a defendant in a divorce action. It has been specifically held that the requirement of section 502, Id., as to residence does not apply to a defendant who prosecutes an action for divorce on cross-petition under section 504, Id. The defendant in a divorce action, by cross-petition, may procure a divorce in a county of which he is not a resident and in a state of which he is not a resident where the action was properly commenced under section 502, Id. Newman v. Newman. 27 Okla. 381, 112 Pac 1007. This is on the theory that the court, having acquired jurisdiction under section 502, Id., will retain jurisdiction to afford complete relief between the parties under section 504, Id.

But there is no decision holding that either the plaintiff or the defendant may procure a divorce in Oklahoma unless the jurisdictional requirement of section 502, Id., is met.

Since the time of Beach v. Beach, 4 Okla. 359, 46 Pac. 514, it has been consistently held that residence is a jurisdictional fact that must be alleged and proven by the plaintiff in a divorce action and it must affirmatively appear in the record. Jurisdiction cannot be acquired by waiver or consent.

The trial court, having acquired jurisdiction of a divorce proceeding, by the filing of a petition conforming to the provisions of section 502, Id., retains jurisdiction to afford complete relief of the parties, but before that jurisdiction may be exercised the court must acquire jurisdiction of the defendant, which may be done in conformity to section 503, C. O. S. 1921, by summons or publication. The action is in rem and publication in proper.

Having acquired jurisdiction of the subject-matter and of the parties, the court may grant a divorce to either party. Section 504, Id. Or refuse to grant a divorce to either or both parties. Section 505, C. O. S. 1921.

When a divorce is refused, the court may, for good cause shown, make such order as may be proper for the control and equitable division and disposition of the property of the parties, or either of them, having due regard to the time and manner of acquiring such property. Davis v. Davis, 61 Okla. 275, 161 Pac. 190. In that case it was held that the power of the court under this section was limited to dealing with the property of the parties at the time the decree was rendered, and that there was no authority to reach out and compel the payment of certain stipulated sums in the future. Or, in other words, distinction was made between a division of property and alimony.

When a divorce is granted under section 508, C. O. S. 1921, by reason of the fault or aggression of the husband, the wife shall be restored to all the property, lands, tenements, and hereditaments owned by her before marriage or acquired by her in her own right after such marriage and not previously disposed of (Silva v. Silva, 81 Okla. 159, 197 Pac. 165), and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce (Silva v. Silva, supra), "* * * which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the

court may deem just and equitable" (Derritt v. Derritt, 66 Okla. 124, 168 Pac. 455), and as to the jointly acquired property, the same shall be divided between the parties as the court shall deem just and reasonable by a division of the property in kind or by setting the same apart to one of the parties and requiring the other thereof to pay such sum as may be just and proper. Section 508, C. O. S. 1921; Dunlap v. Dunlap, 88 Okla. 200, 212 Pac. 608.

This section contemplates the restoration to the wife of her property, alimony and division of jointly acquired property. Under such circumstances she is certainly entitled to all of her own property and to her fair share of the jointly acquired property. In addition to that it is the duty of her husband to support her and she is entitled to alimony, which, since the time of Poloke v. Poloke, 37 Okla. 70, 130 Pac. 535, has been defined to be "* * * an allowance which the husband pays, by order of court, to his wife for her maintenance while living separate from him, * * * after the divorce is granted."

The evidence in this case discloses that there was no jointly acquired property and the property involved in the action was not in whole or in part that of the plaintiff, so that even though the plaintiff was granted a divorce after personal service in Oklahoma, she would be entitled only to alimony

If the decree in this case can be construed to provide for a division of property, it is void for the reason that the court, under the evidence and under the pleadings, is without jurisdiction to make such an order.

In the case of Kusel v. Kusel, 147 Cal. 57, 81 Pac. 295, that court discussed the distinction between alimony and division of property. It may be that that decision is the reason for the plaintiff bringing her suit in this state. There the facts disclose that the California statute authorizes a wife deserted by her husband to sue him for permanent support and maintenance. The court said:

"It will be observed that there is nothing in the statutory provision above quoted expressly authorizing the court in suits for maintenance to divide the property of the husband, or to give to the wife, in lieu of periodical payments for her support, a gross sum out of the husband's estate. * * *"

It was there insisted that the language of the statute authorizing the court, upon the granting of the divorce for the offense of the husband, to make a suitable allowance to the

wife applied to a proceeding for alimony without divorce, but the court held that that section did not apply, and that:

"* * * The action does not contemplate a divorce, but, on the contrary, that the parties shall continue to remain as they were before—husband and wife. The rights of the wife in the remaining property of the husband are not destroyed or affected in the least by the decree or judgment. The necessity for the separate maintenance may terminate at any time by reconciliation of the parties, or by the death of one of them. The law favors the reconciliation of the parties, and it should not be construed so as to afford a temptation for the wife to press an action for maintenance, rather than to seek restoration to her marital rights. There is nothing in the statute which requires us to depart from the prevailing rule that the right to alimony or maintenance, where the marriage is not dissolved, contemplates periodical payments during such time as the necessity for maintenance continued, and not an absolute allowance out of the estate."

That is the reasoning followed by this court. Permanent alimony and division of property are final orders and are not affected by a changed condition, not even by the remarriage of the parties. Dunlap v. Dunlap, supra; Privett v. Privett, 93 Okla. 71, 220 Pac. 348, and Davis v. Davis, supra.

Alimony, under section 514, C. O. S. 1921, is but a temporary order, which may not be pleaded as res judicata. Lewis v. Lewis, 39 Okla. 407, 135 Pac. 397, and Williams v. Williams, 103 Okla. 194, 229 Pac. 797.

The evidence shows that the plaintiff owned no property and that there was no jointly acquired property. Under our law there is no provision for transfer of the property of the husband in an action for alimony without divorce. For that reason the judgment in so far as it may be construed to be a division of property is coram non judice and void.

Lewis v. Lewis, supra, in construing section 514, Id., held that that section was based on the liability of the husband for the support of his wife and that the gist thereof is the duty of the husband to support the wife. The court said:

"This statute does not contemplate a termination, but rather a continuance, of the relation of husband and wife, at least of the marital obligation of the husband * * * during the period of their married life"

—and:

"A decree ordering the payment of alimony considers a condition often temporary in its duration; one that may end at any time, either by the reconciliation of the parties or the voluntary discharge of duty by the husband."

The court in that case quotes from the case of Gilbert v. Gilbert (Ohio) 35 L. R. A. (N. S.) 521, as follows:

"In rendering a decree for alimony alone the court necessarily has in view that the marital contract still exists; that the parties are still bound by all its mutual obligations; that they may become reconciled; and that the grounds and the desire for the allowance may be wiped out at any time. A decree in such a case is continually subject to modification, while in rendering a decree for divorce and alimony the court determines the ultimate relation of the parties, and fixes the amount and the mode of payment of any money or property allowance to the wife."

To the same effect is Williams v. Williams, supra, and Doggett v. Doggett, 85 Okla. 90, 203 Pac. 223. The Montana court, in Decker v. Decker, 185 Pac. 168, held to the same effect, struck from the decree so much thereof as divested the defendant of title to the land and transferred the same to the plaintiff, and said:

"Provision for the support and maintenance of the wife and minor children, if any, during the period of separation, is all that is aimed at or sought to be accomplished by the action, and this, we think, should be in the form of periodical allowances, which may be changed or discontinued by the court, as the circumstances may require."

Following this line of decision the judgment of the trial court decreeing to the plaintiff the title to all the property of the defendant in Oklahoma is without authority of law and void.

The most that the trial court could have awarded, had it had jurisdiction to do so, would have been alimony of a temporary character subject to changed condition of the parties. We do not think that that court had any jurisdiction even to award alimony of a temporary nature where the evidence showed that neither the plaintiff nor the defendant was a resident of the state and where they were each prosecuting an action for divorce and alimony in the state of their residence and where it is shown by the evidence that the defendant had property of the value of $100,000 in the state where the alimony and divorce actions were pending. An action for divorce cannot be maintained in Oklahoma unless at least one of the parties is a resident of Oklahoma, and the same rule applies to an action for alimony without divorce, and especially does

it apply where the parties are each prosecuting an action for divorce and alimony in the state of their residence and in which state the defendant has property of the value of $100,000. The court, having jurisdiction of the subject-matter and of the parties, may make an order for maintenance of the wife and enforce that order by contempt. Ex parte Joutsen, 154 Cal. 540, 98 Pac. 391.

The plaintiff cites no case and we have found none holding that a wife may sue her husband for alimony without divorce in this state where both plaintiff and defendant are residents of another state, in which they are each suing the other for divorce and alimony with personal service on each and where the husband has property of the value of $100,000 in the state of their residence.

The husband's duty to support the wife is dependent upon the marriage relation and is limited to the state in which he resides unless by his wrongful conduct he has forced her to reside elsewhere, in which case the duty extends to the state in which she resides. But there is no such duty in a state where neither resides. The pendency of a bill by the wife for divorce and alimony after personal service precludes a separate bill for separate maintenance. Donnelly v. Donnelly, 39 Fla. 229, 22 South, 648; Babbitt v. Babbitt, 69 Ill. 277; Keerl v. Keerl, 34 Md. 21, and Dithmar v. Dithmar (N. J. Eq.) 59 Atl. 644.

In Curtis v. Curtis (Pa.) 49 Atl. 769, it was said:

"But both parties were at the time of separation, and still are, citizens and residents of the state of Ohio, and have never been within the jurisdiction of Pennsylvania. She therefore is not entitled to any rights, nor he subject to any obligations, arising solely under the statutes of this state."

In Keerl v. Keerl, supra, the court said:

"Alimony is defined to be 'a maintenance afforded to the wife where her husband refuses to give it; or where from his improper conduct she is compelled to separate from him.' 2 Bishop on Mar. and Div., sec. 351, note 1; Wallingford v. Wallingford, 6 H. & J. 488. It is an incident of the marriage and is a right entirely depending upon the status of the parties, and each state has the right to determine the status and condition of those who are domiciled within its limits. The courts of this state have therefore no jurisdiction to pass upon and determine the relative duties of a husband and wife, both of whom are residents of another state, and the Legislature never intended to confer such power by the passage of the Act of 1777 nor by the adoption of the Code. To give jurisdiction to our courts, in such cases, one or other of the parties must be domiciled within the state. It is contended that the court below had jurisdiction in this case because the husband, Henry Keerl, had property within its jurisdiction. To adopt such a doctrine would result in great confusion, vexation, and perhaps, injustice, for the wife might then institute a proceeding for alimony in every state where her husband might have property, and have it decreed to her in each state, and that too, as was very forcibly said by the learned judge who decided this case below, when 'the court within whose jurisdiction the parties are domiciled, may, perhaps, have decreed a restitution of conjugal rights.' "

In Simon v. Simon, 73 Fla. 35, the applicant alleged that she was a resident of the state of New York and that her husband was a resident of the state of New York. The court said:

"As the appellee alleges that neither she nor the appellant is a resident of this state, she is not entitled to sue for alimony or maintenance in the courts of this state."

In Hunnings v. Hunnings, 55 Pa. Sup. Ct. 261, the plaintiff came to the state for the purpose of finding her husband, and upon failure to do so she instituted proceedings to seize and sell the property. The court held that she could not maintain an action against her nonresident husband until she had established a domicile in Pennsylvania.

In Carter v. Morris, etc., 108 La. 143, 32 South. 473, the first paragraph of the syllabus is as follows:

"The courts are without jurisdiction to grant to persons not residing within the limits of the state a decree of separation of property."

This case was before this court on a preliminary matter, 131 Okla. 95, 267 Pac. 621, and in determining the questions presented to the court on that appeal, this court said:

"She claimed that her husband was possessed of property of the aggregate value of about $300,000, some of which was oil producing lands, and that the income from said property was approximately $2,500 per month, all of which was located in the state of Oklahoma, a greater portion being located in Carter county."

It did not appear at that time that the plaintiff had commenced a suit in California for alimony before she filed the present suit and that after the filing of the present suit she had dismissed her alimony action and had commenced a suit for divorce and alimony in the California court and that that action was pending at the time this

case was tried, or that Hoxie Anderson was the owner of $100,000 worth of property in California, as the trial court found.

In support of the doctrine announced in that case, this court cited Litowich v. Litowich, 19 Kan. 451, wherein that court found:

"They were both residents of Kansas prior to said absence, and were both residents when this action was commenced"

—and after making that finding, said:

"* * * But for the purpose of this case we will suppose that neither of the parties was a resident of Kansas for the whole of the year next preceding the commencement of this action; then may the plaintiff maintain this action? We think she may"

—and then proceeded to discuss that question. The Kansas court in that case did not consider a situation where neither of the parties was a resident of the state either at the time of the commencement of the action or at the time of the trial thereof.

On the other hand, that court in that case, in considering the divorce granted the parties thereto in Utah, held that it was void for the reason that

"Neither of the parties had ever resided in Utah, neither of them had ever been there. And neither of them had ever had any expectation of residing there."

If that case is an authority at all, it is an authority that residence of at least one of the parties is necessary to confer jurisdiction upon the court in an action involving the marital status of the parties.

The learned Justice in preparing the opinion in Anderson v. Anderson, supra, referred to the Kansas case of Wolfort v. Wolfort, supra, as holding that an action for separate maintenance on the ground of abandonment could be maintained within a period of less than one year after the abandonment occurred. That case recites that the husband abandoned his wife in Chicago and removed to Kansas, where he was personally served and where he was present in court at the time the order was made providing for temporary alimony and expense money. The case holds that:

"* * * The duty of a husband to support his wife is continuous, and, if he abandons her, she does not have to wait a year, until the abandonment has ripened into a cause for divorce, before she can maintain an action for separate maintenance."

It will be seen that the facts in that case are materially different from those in the case at bar. Hoxie Anderson does not live in Oklahoma, he was not served in Oklahoma, he was not present at the hearing and he did not abandon his wife and come to this state leaving her in another state. He did not refuse to support her, but she left him because of his treatment of her, and she sued for divorce and alimony in the state where they both lived.

While that case is referred to as holding that an action for separate maintenance on the grounds of abandonment could be maintained within a period of less than one year after the abandonment occurred, an examination thereof discloses that such a statement is not warranted. That court said:

"The petition alleged extreme cruelty and gross neglect of duty without detailing facts upon which the allegations were based. It was subject to a motion to make more definite and certain (Callen v. Callen, 44 Kan. 370, 24 Pac. 360), but no such motion was made; neither was a demurrer filed by this appellant. No reason suggests itself why the defendant in such an action, if he desired to do so, might not waive the lack of specific allegation of fact upon which were based the charges of gross neglect of duty and extreme cruelty (Laithe v. McDonald, 7 Kan. 254). But, passing that, and treating the petition as alleging as an only ground for relief abandonment for less than one year, it is still sufficient to support a cause of action for separate maintenance."

The order made in that case was not based on the statute, but on the equitable principle that it was the duty of the husband to support his wife in the state of his residence. Such is no doubt the law, but it does not apply to the facts in the case at bar.

In that case the court discussed the statute, but considered only a portion thereof, and failed to consider the remainder of the section (514) which reads as follows:

"* * * Either may make the same defense to such action as he might to an action for divorce, and may, for sufficient cause, obtain a divorce from the other in such action."

This section must be construed as a whole, and cannot be divided and one meaning given to a part of the section and another meaning to the remainder. In order to determine its meaning it is necessary that we consider other sections of the same article and other applicable provisions of our statute.

Applying the rule announced in Wolfort v. Wolfort, supra, to section 514, Id., in its entirety, we find that an action may be maintained for alimony without a divorce by a nonresident against a resident. The

plaintiff wishes this court to extend that rule to permit such a proceeding by a nonresident against a nonresident. If the rule were so extended, under the latter portion of the section authorizing the defendant, for sufficient cause, to obtain a divorce on a cross-petition (Newman v. Newman, supra), we would have a practice by which a nonresident might obtain a divorce from a nonresident. This is clearly in conflict with the established principles in Oklahoma.

Litowich v. Litowich, supra, in construing the language, "* * * any of the causes for which a divorce may be granted, * * *" appearing in the first part of section 514, Id., holds that residence is not one of the causes, and if that is so, then a similar construction should be given to "for sufficient cause" in the latter part of the section. Under such a construction a nonresident might institute a suit for alimony and a nonresident might cross-petition for divorce. Under such a construction a resident of California might sue her husband in Oklahoma for alimony, and her husband, a resident of California, might obtain a divorce in the Oklahoma court when neither of the parties are residents of Oklahoma. If that rule applies to residents of California, it applies to residents of New York, Utah, South Carolina, or any other state. Should that construction be placed upon our law, Oklahoma would become a divorce mecca. By placing such a construction upon our law we would strike down the provision requiring one year's residence and other restrictions wisely included in our statutes. The Legislature never intended any such thing to happen.

On the other hand, following the reasoning applied in all divorce and alimony causes in this court requiring that alimony is but an order of court requiring the husband or wife to maintain his or her spouse during the continuance of the marital relation, there is no duty on the part of a nonresident husband to maintain a nonresident wife in Oklahoma. When we give section 514, Id., that construction we must hold that a nonresident wife is not authorized to maintain an action in Oklahoma against a nonresident husband for alimony. Under that construction that section is valid in all particulars. A nonresident wife may institute a suit for alimony against a resident husband, and he, being a resident, may obtain a divorce in that action on a cross-petition. Or a resident wife may maintain a suit for alimony against a nonresident husband and he may obtain a divorce in that proceeding on a

cross-petition. In either of these events there is a basis for the alimony action, for in the one it is the duty of the husband to support his wife where he lives and, if by his conduct he has made it impossible for her to live with him, it is his duty to support her where she lives, and in both events, where either of the parties is a resident of the state, the jurisdiction of the courts of this state may be invoked to protect the rights of the injured spouse. Where neither of the parties is a resident of the state, neither of the parties has any right to alimony in this state.

The construction thus placed on section 514, Id., does not deprive an injured spouse of the rights to alimony. Such an action may be maintained in the state where either of the parties is a resident, and when a judgment is rendered therein the courts of this state, under the doctrine of comity, in a proper proceeding in this state, will subject the property located in the state to that judgment. Until there is a judgment of a court having jurisdiction to render a judgment for alimony, the courts of this state will not grant alimony to a nonresident wife from a nonresident husband who has not appeared or been personally served in Oklahoma.

To hold otherwise is to hold that the courts of Oklahoma will give the property of Hoxie Anderson to the plaintiff as alimony in an action for alimony without divorce when the California court, under the rule announced in Kusel v. Kusel, supra, would refuse to do so. Certainly the courts of this state will not afford the plaintiff a greater relief than the court of the state of her citizenship and residence. On the other hand, as she is prosecuting an action for divorce and alimony in California, that court has jurisdiction to allow her temporary alimony for her maintenance pending the litigation. There is ample property in California belonging to Hoxie Anderson out of which the order of that court may be enforced. If that court in the trial of the issues determines that she is entitled to more than the property of Hoxie Anderson in California will satisfy, then an action may be instituted in this state on the California judgment and the property of Hoxie Anderson in this state may be subjected thereto.

If the contention of the plaintiff in this cause is true, a resident of South Carolina can come to Oklahoma, where her husband owns property, and sue him for alimony, and her husband, who is a resident of South Carolina, can cross-petition in Oklahoma for

divorce, and the Oklahoma court could then grant the defendant a divorce when he could not get a divorce in the state in which he lives.

A resident of Utah who becomes offended because her husband whips her, which he is authorized to do under the laws of Utah, could come to Oklahoma and obtain alimony by order of the Oklahoma court against her husband, who is a resident of Utah, when the state of their residence could afford her no relief whatever.

A resident of New York, where habitual drunkenness is not ground for divorce, might sue her husband for alimony, obtain the same, when she would be entitled to no relief under the New York law, and her New York husband could cross-petition for and obtain a divorce in Oklahoma, when he would not be entitled to a divorce in New York.

Then the divorce so obtained would be held void, as was done in Litowich v. Litowich, supra, for the reason that neither of the parties was a resident in the state where the divorce was granted.

In Anderson v. Anderson, supra, the California case of Murray v. Murray, 47 Pac. 37, is cited. That case recites that the plaintiff was a resident of the state of California, where she married the defendant and where she has resided at all times up to the time of the trial.

There is also cited the case of Hamil v. Hamil, 106 Okla. 14, 232 Pac. 823. There the plaintiff was a resident of this state and the suit was for divorce and alimony. That case is not an authority on the question before this court.

There is no case cited in Anderson v. Anderson, supra, or in the briefs filed in that case which holds that a nonresident wife may sue a nonresident husband in Oklahoma for alimony with or without divorce.

Judgment in this case is void and under section 817, C. O. S. 1921, its invalidity may be asserted by "any person affected thereby." The defendants are affected by the judgment and may assert the invalidity thereof.

The title of this property is in the defendants. Hoxie Anderson does not claim it. Reversal of the judgment in the case will not affect his rights in any particular and he is not a necessary party to the appeal.

Judgment of the trial court is reversed, and the cause is remanded, with instructions to the trial court to dismiss the action.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, and CULLISON, JJ., concur. HEFNER, J., disqualified and SWINDALL, J., absent.