| | |
|---|---|
| 33 | 433 |
| 54 | 730 |

## C. J. BIRDZELL v. MARGARET BIRDZELL, by *John Tucker*, her *Guardian*.

DIVORCE; *Insane Party*. The guardian of an insane woman cannot bring and maintain an action against her husband for divorce and alimony, or for alimony alone.

*Error from Sedgwick District Court.*

ACTION for divorce, brought by *Margaret Birdzell* against *Caleb J. Birdzell*. Trial at the October Term, 1883, when the court refused to grant the divorce, but granted $5,000 as alimony, and decreed that the same should be a lien upon the

28 — 33 KAS.

homestead of the plaintiff and the defendant, and that it should be sold to satisfy the judgment. The defendant brings the case to this court. The material facts are stated in the opinion.

*E. Hill,* and *Rossington, Johnston & Smith,* for plaintiff in error.

*W. P. Campbell,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John Tucker, in the name of "Margaret Birdzell, by John Tucker, her guardian," against Caleb J. Birdzell, to obtain a divorce on the part of Margaret Birdzell, an insane woman, from her husband, Caleb J. Birdzell, and for alimony. The case was tried before the court, without a jury, and the court refused to grant the divorce for the reason that it deemed itself powerless to grant a divorce to an insane person, but granted the alimony for the gross amount of $5,000, and decreed that the same should be a lien upon the homestead of the plaintiff and the defendant. The court also decreed that the homestead should be sold to satisfy the judgment for alimony, and that a general execution might afterward be issued against the property generally of the defendant to satisfy any remainder that might still be due upon the judgment; and decreed that said allowance of $5,000 should be in full of all claims that might ever be made by the plaintiff upon the defendant or upon his estate. After this judgment was rendered, and after a motion for a new trial was made and overruled, the defendant, as plaintiff in error, brought the case to this court, and he now asks for a reversal of such judgment.

Several questions are presented to this court, but we think a decision of the first and principal question in the case will render it unnecessary to consider or decide any of the other questions raised. Such first and principal question is, whether an action for divorce and alimony, or for alimony alone, can be brought and maintained by the guardian of an insane woman. It seems to be almost admitted by counsel for the

defendant in error, plaintiff below, that the action for divorce cannot be maintained; but such counsel still insists that an action for alimony can be maintained. It seems, however, clear to us that both actions must be placed in the same category. We shall consider the question with reference to divorce first.

Marriage is a personal status and relation assumed for the joint lives of the parties, and can never be created or brought into existence except with the free and voluntary consent of the parties assuming the same, and it can never be dissolved or destroyed while both parties are living, so as to affect an innocent party thereto, except for a grievous and essential wrong committed against such relation by the other party, and with the free and voluntary consent, and indeed with the active and affirmative volition, of the wronged and innocent party. In other words, the marriage status and relation of an insane person, who has given no cause for a divorce, cannot be dissolved or abrogated at all, for it cannot be dissolved or abrogated except with the voluntary consent of such insane person, and such insane person is incapable of giving any consent to such a dissolution or abrogation. How could a guardian conduct the mind of his insane ward through the ceremony that would make him or her a husband or wife, or how could he conduct such mind through a litigation that would undo the marriage relation? Marriage might be ever so beneficial to the ward, financially or otherwise, but as it depends upon the intelligent volition of the party to be married, the guardian could not effect it; or if it existed, he could not inaugurate and conduct a proceeding that would destroy it. There are no wrongs that may be committed by a husband or wife sufficient in and of themselves to work a dissolution of the marital ties. The injured party may be willing to condone the wrong, or, for reasons satisfactory to himself or herself, may desire to continue the marriage relation, notwithstanding the wrong. In the present case, some of the wrongs charged against the defendant existed prior to the insanity of the plaintiff. Can the guardian say that she did not condone them? Many per-

sons believe that marriage is a sacrament, and that to procure a divorce upon any of the ordinary grounds for which divorces are usually granted is a violation of all true religion and morality. Should such a person be divorced, though innocent himself or herself, without his or her consent? And could a guardian for such a person, if he or she should become insane, give the necessary and required consent? Besides, insanity is often temporary; and what if such insane person should become restored to sanity immediately after the divorce, and should disapprove the divorce and all the proceedings connected therewith? Whether a party who is entitled to a divorce shall commence proceedings to procure the same, or not, is a personal matter resting solely with the injured party, and it requires an intelligent election on the part of such party to commence the proceedings, and such an election cannot be had from an insane person. As sustaining the foregoing views, we refer to the following authorities: *Worthy v. Worthy*, 36 Ga. 45; *Bradford v. Abend*, 89 Ill. 78; 2 Bishop on Marriage and Divorce, § 306*a;* also, § 641 of the civil code provides, that "the petition (for a divorce) must be verified as true by the affidavit of the *plaintiff.*" An agent, or attorney, or guardian, is not mentioned. (See *Baker v. Knickerbocker*, 25 Kas. 290.) Also, both parties are allowed to testify in divorce cases. (Laws of 1871, ch. 116, § 6; Comp. Laws of 1879, ch. 80, § 651*a*.)

We now come to the question of alimony. May the guardian of an insane wife commence and maintain an action against the husband for alimony? There is no statute in this state that in terms authorizes any such thing, and we think the implications of the statutes are all against it. Alimony may be allowed as an incident to a divorce, or it may be allowed in a separate action and without a divorce. What we have already said in this opinion with reference to divorce will dispose of the question as to whether the alimony may be granted as an incident thereto. We shall now proceed to consider the question whether it may be granted without a divorce. The

statute providing for alimony without a divorce reads as follows:

"Sec. 649. The wife may obtain alimony from the husband without a divorce, in an action brought for that purpose in the district court, for any of the causes for which a divorce may be granted. The husband may make the same defense to such action as he might to an action for a divorce, and may, for sufficient cause, obtain a divorce from the wife in such action." ( Civil Code, § 649.)

It will be seen that alimony without a divorce may be obtained only for the same causes for which a divorce may be obtained. Now we have just held that an insane woman cannot obtain a divorce, for the reason that she cannot exercise her choice or election to do so; and that her guardian cannot do so for her. The statute also provides that "the husband may make the same defense to such action as he might to an action for a divorce;" and we have just held that the husband may, where the wife is insane, defeat the action for divorce. The statute also provides that the husband "may, for sufficient cause, obtain a divorce from the wife in such action." Now can a husband obtain a divorce from an insane wife? Can a guardian defend for her? She has a right to testify in a divorce case. Could her guardian supply this testimony? A part of the grounds for divorce and alimony in the present case existed before the plaintiff became insane. Can the guardian say that she did not condone the wrongs upon which these grounds rest? In this state there is no such thing as a divorce *a mensa et thoro,* or merely from bed and board. The plaintiff and defendant are still husband and wife, absolutely and entirely. She will inherit from him, or he from her, at least one-half of the other's estate, notwithstanding the judgment of the court below, and the husband is still liable for her support. And there are better remedies to enforce this support than the strange one resorted to in the present case. There are all the common-law remedies. And there are the still further remedies furnished by §§ 13, 43, 44, 45 and 46 of ch. 60 of the General Statutes. (Comp. Laws of 1879, ch. 60, §§ 13, 43 to 46.) Besides, could the homestead be sold without

"the joint consent of the husband and wife?" (Const., art. 15, § 9.) The husband has not consented, and when the wife is restored to sanity, as she may be, she may claim that she has never consented; and of course she has not consented.

After a careful consideration of this case, we have come to the conclusion that the guardian of an insane woman cannot maintain an action against her husband for alimony.

The judgment of the court below will be reversed, and the cause remanded for further proceedings, in accordance with this opinion.

HORTON, C. J., concurring.

JOHNSTON, J., not sitting.