Hon. JNO. H. BURFORD, Chief Justice.
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL, } Associate Justices.
Hon. CLINTON F. IRWIN,
Hon. JNO. L. McATEE,

---

PHELPS, DODGE & PALMER COMPANY, *a corporation,* v. O. D. HALSELL AND W. A. FRAZIER, *Partners, doing business as* HALSELL-FRAZIER GROCER COMPANY.

(Filed June 7, 1901.)

1. THE FORM AND NOT THE COMMON LAW CAUSES OF ACTION IS ABOLISHED BY THE STATUTE. Every cause of action that existed under the common law forms which has not been expressly abolished still exists under the name of a "civil action." The statute did not abolish common law causes of action, but only abolished their forms, and grouped them under one head. A plaintiff, under the statute, must allege and prove every fact that he was required to allege and prove at common law.

2. ACTION IN TROVER—When demand is necessary, and when to be made. Where a party is lawfully in the possession of personal property, before an action can be maintained against him for conversion, a demand for the return thereof must be made, and such demand must be made while such party is in possession of such property, unless it appears that the party has disposed of the same before a demand could reasonably have been made, or that the party disposed of the same to evade demand.

3. CONTRACT OF SALE RESCINDED ON THE GROUNDS OF FRAUD—Party Rescinding must not be Guilty of Laches. Where a party seeks to rescind the sale of personal property on the grounds of fraud, he must exercise reasonable care to discover such

fraud, and much rescind such a sale within a reasonable time after such discovery, in order to affect the rights of innocent purchasers, or intervening creditors, who have not had notice of such fraud. Where goods are purchased fraudulently, and the party who purchases them is allowed to retain the open and notorious possession thereof for a long period of time, and prior to any attempt to rescind the sale has disposed of the same in payment of a pre-existing debt, without notice of said fraud on the part of the party taking such goods in payment of such pre-existing debt, the law will presume that the original seller has waived the fraud, and such seller cannot rescind such sale so as to prejudice the rights of such intervening creditor.
(Syllabus by, the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Dale & Bierer,* for plaintiffs in error.

*Cotteral & Hornor* and *Geo. S. Green,* for defendants in error.

### STATEMENT OF FACT.

Plaintiff in error brought this action in the court below to recover of defendants the value of a certain lot of boots and shoes. According to the petition, in the year 1898, and prior thereto, one M. A. Clark was engaged in the grocery business in Guthrie, O. T., the business being managed by her husband, M. W. Clark. The plaintiff in error is a corporation, existing and created under the laws of the state of Illinois; that it is engaged in the wholesaling of boots and shoes. That between the dates of September 1 and April 18, 1898, the said Clark, as such retail dealer, bought of the plaintiff, at wholesale, boots and shoes for the purpose of and with the intention of disposing of the same. That on the 23rd day of September, 1897, the said M. A. Clark, by her agent, M. W. Clark, for the purpose of obtaining credit from the plaintiffs, in the purchasing, at wholesale, of a certain lot of boots and shoes, made and delivered to the plaintiff a cer-

tain statement, purporting to set forth a true and complete statement of the liabilities and assets of the said M. A. Clark, which statement was to the effect that she, the said M. A. Clark, was worth, over and above all her liabilities, the net sum of from seven to ten thousand dollars. That afterwards, and to-wit, on or about the 16th day of February, 1898, said M. A. Clark, by her agent, M. W. Clark, made a statement to the Wilber Mercantile Agency, of Chicago, Illinois, of which said agency the plaintiff was a member and subscriber, which statement purported to show the assets and liabilities of said M. A. Clark, wherein she claimed and asserted that the net worth of her assets, over and above all her liabilities, was in the sum of about eight thousand dollars. That between the dates of September 1, 1897, and March 4, 1898, said M. A. Clark, by her agent, M. W. Clark, made various other statements to the Dunn Mercantile Agency and to Bradstreet's Mercantile Agency, of which said agencies the plaintiff was a member, in which statement the said Clark claimed that she was worth over and above all her debts and liabilities, the sum of from seven to ten thousand dollars. That said statements were duly authorized to be made by the said M. A. Clark, and were made for the purpose of obtaining credit; that on account of the said statements and relying upon the same, the plaintiff, on the 31st day of January, 1898, sold to the said Clark a certain bill of boots and shoes, of the value of eight hundred thirty-six and thirty-one one hundredths dollars, and on March 4, of the same year, shipped and consigned to M. A. Clark another lot of boots and shoes of the value of fifty-five and twenty-one one-hundredths dollars; which statements so made by said Clark were untrue, and the fact was that at the time of so making said statements

said Clark was insolvent, or worth but little if anything over and above her liabilities and debts, and that said fact was known to her at the time she made such statements.

It is further charged in said petition that upon April 17, 1898, the said M. A. Clark, without the knowledge or consent of this plaintiff, made, executed and delivered to the defendant, The Halsell-Frazier Grocery company, a chattel mortgage upon the boots and shoes above described and that said mortgage was so given to secure an antecedent debt, owing to the said defendant, the Halsell-Frazier Grocery company, and that said antecedent debt existed prior to the delivery and making thereof, and long prior to the delivery by the plaintiff of said boots and shoes to the said Clark. It is further alleged that the plaintiff, immediately upon learning of the fact that said M. A. Clark had deceived plaintiff in said statement, and thereby secured the purchase of boots and shoes heretofore described, rescinded said sale, and, to-wit, on April 28, 1898, notified said M. A. Clark, through her agent, M. W. Clark, and also notified the defendant herein, the Halsell-Frazier Grocery company, that the plaintiff rescinded said sale, for the reason that the same was induced by the fraudulent representations of M. A. Clark, and demanded from each of said parties all of the boots and shoes taken by the said Halsell-Frazier Grocery company, under their chattel mortgage, and upon their failure to return said goods, said plaintiff demanded the value thereof, which demand was refused. Plaintiff further states that said defendant, the Halsell-Frazier Grocery company, has, without right and against the wishes and consent of the plaintiff, sold and converted to its own use, the property above described, belonging to this plaintiff, and that the property so converted was at the time of said conversion, of

the value of eight hundred ninety-six, and fifty one-hundredths dollars, wherefor plaintiff prays judgment.

To the petition the defendant enters a general demurrer, which demurrer is overruled by the court, to which action the defendant excepts. The defendant then files answer to said petition, alleging that on the 18th day of April, 1898, said M. A. Clark made, executed and delivered to defendants and one John Gordon jointly, a certain chattel mortgage, upon the goods and property therein described, and that at or about the same time the said M. A. Clark, made, executed and delivered certain other chattel mortgages, on the same property, to certain other creditors of the said M. A. Clark, that the mortgage given to the said defendants, was given to secure the payment of a note, dated April 17, 1898, due one day after date, for the sum of two thousand, two hundred thirty-two and twenty-one hundredths dollars; that the said mortgage was given and received in good faith to secure the amount heretofore named. That said mortgage was given on the stock of merchandise of the said M. A. Clark, including the boots and shoes which were then in stock. And the defendants further answering say that prior to the time when plaintiff made any claim upon said property, or any part thereof, that defendants had rightfully disposed of and sold said mortgaged property in good faith and for value, under the terms of said mortgage.

To which answer the plaintiff files a general demurrer, which demurrer is overruled by this court, and exception by the plaintiff. The plaintiff then files its reply to defendant's answer. Said reply admits that defendants, prior to the time when plaintiff made any claim upon said property, or any part thereof, had sold and disposed of said mortgaged

property, but denies that the same was in good faith, but alleges that said sale was with full knowledge on the part of the defendant of the claim of the plaintiff. And in said reply plaintiff claims the right to recover the proceeds of said sale of the defendant. And afterwards the defendants move the court for judgment on the pleadings in this action, which motion was sustained and judgment on the pleadings entered in favor of defendant and against the plaintiff for costs, to which judgment of the court the plaintiff excepts, and brings the case here for review.

Opinion of the court by

IRWIN, J.: In plaintiff's petition it is alleged that "the defendant, the Halsell-Frazier Grocery company, has, without right, and against the wishes and consent of the plaintiff, sold and converted to its own use, the property above described, belonging to this plaintiff, and that the property so converted, was, at the time of such conversion, of the value of eight hundred ninety-six and fifty one hundredths dollars." This shows that the plaintiff intended in this action to bring an action of conversion. On this proposition arises the question, did the plaintiff at and prior to the commencement of this action convert to its own use the property of the plaintiff, and has the plaintiff taken the necessary and proper steps to make out a case of conversion? If not, the plaintiff cannot recover and the trial court was right in rendering judgment on the pleadings. To arrive at a correct solution of the question before the court, it will be necessary to consider the law of conversion, and especially to determine the nature of the action of conversion. It may be contended that under our code the procedure or forms of action, have been abolished. While we have but one form of action in this Territory, this does not mean that every action

which is brought is controlled by the same rules of law. All actions which are not criminal, we call civil, but this does not mean that there is only one kind of civil action. We have the same kind of actions, practically, as existed at common law. We have actions in attachment, replevin, injunction, mandamus, ejectment, etc. Each of these actions has its own rules of law, and, except when modified by statute, is subject to common law principles. It would be impossible to conduct the business of courts without keeping in mind the essential distinctions existing between the various kinds of actions. By its very nature the practice of law must have some consistency, and when an action is brought in court, there must be some way of determining what the character of the action is, and these distinctions are by no means artificial. They are perfectly material, and are necessary to the protection of the rights of litigants, as well as for the information and guidance of the court. This court has very closely and concisely stated the rule in regard to distinctions existing in this Territory in all actions. In the case of *Casey v. Mason,* reported in the 8 Okla., 665, this court says:

"It is contended by the appellee that the common law forms of action have been abolished, and that now we have only one form of action, which is called a civil action, and that we are not required to plead with that strictness that we were at common law. This contention is, in a measure, undoubtedly correct, but while the forms of action have been changed, we must not forget that the right of any particular action, as it existed at common law, remains the same unless abridged or denied by the statute, and while the common law forms of action have been abolished, the rights of such actions continue to exist, but under a different name. Every cause of action that existed under the common law forms, which has not been abolished, still exists under the

name of a civil action. The statute did not abolish common law causes of action, but only abolished their forms, and grouped them under one head, and there is no difference between trespass at common law, and under the statute. A plaintiff under the statute must allege and prove every fact that he was required to allege and prove at common law."

Applying the rule thus laid down to the case at bar, it will be seen that in order for the plaintiff to prevail in this case, it was necessary for him to plead, and if the case went to trial, to prove every fact that was necessary to establish and make out a case of conversion. A case of conversion, in legal parlance, is ordinarily termed an action of trover. We take it that the doctrine is well settled that when a person comes into the possession of property lawfully, a demand is necessary before an action of trover or conversion can be maintained.

In support of this doctrine we cite the case of *Tripp v. Pulver*, 2 Hun. (N. Y.) 511. In the case at bar there can be no contention but that the defendant's possession was lawful, hence the demand was necessary.

The next inquiry is, when should the demand be made in order to make the defendant liable in an action of conversion? We believe the law to be that a demand must be made while the defendant is in possession of the goods, and able to comply with the same, unless it appears that defendant fraudulently disposed of the goods before demand could reasonably have been made, or that the defendant had parted with the goods so as to evade the demand.

"A demand and refusal are not evidence of a conversion, unless the thing demanded was at the time in the possession

of the defendant or under his control." (*Beckman v. McKay,* 14 Cal. 250; *Hill v. Belasco,* 17 Ill. App. 194; *Davis v. Buffun,* 51 Me. 160.)

"If at the time of demand the defendant had neither actual or constructive possession of the property, no right to it nor control over it, and therefore could not comply, a demand and refusal only will not support an action of trover." (*Yale v. Saunders,* 16 Vt. 243.)

In *Beckman v. McKay,* above cited, the California supreme court says:

"A demand and refusal is no evidence of a conversion, unless the jury are satisfied of the plaintiff's title and the defendant's possession."

"To show a conversion the plaintiff must prove either a refusal to deliver, upon a previous demand, when the defendant had the goods in his possession, and could have complied with the demand, or a fraudulent conversion of the goods, before demand, or that the defendant had parted with the goods, so as to evade the demand." (*Andrews v. Shattuck,* 32 Barb. [N. Y.] 396.)

"It is only when a party has possession or control of the property in question, that a refusal to deliver it on demand constitutes evidence of conversion." (*Filmore v. Horton,* 31 How. [N. Y.] P. R. 424.)

Now we take it that whatever it was material to prove, in order to maintain this action, it was necessary for the petition to allege. What was the demand as shown in the petition, and when was it made and did the defendant have the possession of the goods when demanded? The petition shows that on April 26, 1898, plaintiff demanded from each of said parties all of the boots and shoes taken by said Halsell-Frazier Grocery company under their chattel mortgage, and

upon the failure to return said goods said plaintiff demanded the value thereof, which demand was refused. The petition also alleges that the mortgage given by Clark to the defendant was executed April 17, 1898, and the said petition contains no allegation that the property was actually in the possession or under the control of defendants on April 28, 1898, the date of the demand, and it is set up in the answer that at the time of the demand, the defendant was not in the possession of said goods; and as this statement in the answer is not denied in the reply of the plaintiff, that is, in plaintiff's reply, he does not deny that at the time of the demand and prior thereto, the defendant had sold and delivered the goods in question; but in said reply the plaintiff claims that said sale on the part of the defendant was made with the full knowledge of plaintiff's rights and claims. So it will appear from the pleadings as a whole that it is admitted that at the time that this demand was made, the property in question was not in the possession or control of the defendant, and there being no allegation that the defendant had disposed of said property for the purpose of evading the demand, then, under the law as above cited, this demand was not sufficient to charge the defendant with the conversion of the property of the plaintiff.

Then again, was this property, at the time of the sale by the defendant, the actual property of the plaintiff? If it was not, then, certainly, the plaintiff cannot recover for its conversion. Under the petition these goods were purchased by Clark fraudulently, by means of a false statement as to her financial condition. Now it seems to us, to put the case in the most favorable aspect possible for the plaintiff, this sale was not void, but voidable, at the option of the

plaintiff. Under such a sale the plaintiff had the right to rescind the same and recover back his goods, or he had the election to treat the sale as legal; and unless the plaintiff did so rescind, then said sale would be a valid and binding sale, and vest the title of such property in the purchaser, Clark. At the time of the delivery of said goods the title was vested in said Clark, subject to the plaintiff's right to rescind and avoid said sale. A large portion of said goods were sold by the plaintiff to Clark on January 31, 1898, and the balance on March 4, 1898, but no steps were taken by the plaintiff to rescind said sale, or any notice given of his intention so to do, until April 28, 1898, eleven days after the mortgage to the defendant was executed. Now what was the condition of these goods and the title thereto on the 17th day of April, when the mortgage was executed by Clark to the defendants? Can it be said that at that time, prior to any notice of an intention to rescind, or any action on the part of the plaintiff tending to rescind the sale that the plaintiff was the actual owner of said goods? True, it may be said that the plaintiff at that time had a right to become the actual owner, and to take the possession of said goods. But before that right ripened into actual ownership there was something necessary to be done on the part of the plaintiff, to-wit, to give notice and rescind the sale. This he did not do until April 28, 1898, as shown by the pleadings. Thus we think that at the time said goods were mortgaged by said Clark to the defendant, and at the time defendant took possession of the goods, and sold and converted them to its own use, which was, according to the pleadings, prior to April 28, 1898, the plaintiff was not the actual owner of said goods; and if not, the defendant did not convert to its own use the goods of the plaintiff. It is not disputed but

that if Clark, at any time prior to April 28, the time when plaintiff served notice on Clark and the defendant of his election to rescind the sale had sold said goods to a *bona fide* purchaser for a sufficient consideration, then the right of plaintiff to rescind would have been lost as to such goods. But it is claimed that as the defendant took the goods in payment of a pre-existing debt, that they were not in law such *bona fide* purchasers. Upon this question there seems to be a conflict of authorities. Many respectable authorities holding that such a pre-existing debt is a sufficient consideration, others of equal weight holding that it is not. But we take it that in a case like the one at bar, where the seller of goods desires to rescind the sale on the grounds of fraud in the purchase thereof, that he should be held to some degree of diligence in asserting his rights. In other words that he must not be charged with laches, and that if he desires to rescind the sale he should do so within a reasonable time, particularly when the rights and interests of other creditors intervene.

Now according to the statements contained in the petition, the false statements upon which plaintiff relied in the sale of the goods in question, or a large portion of them, must have been made at least two and one-half months prior to this mortgage executed to the defendants. A large portion of the goods sued for were sold on January 31, 1898; so it will be apparent that any statement relied upon by plaintiff which induced this sale, must have been made prior to that time. This was two months and seventeen days prior to the date of this mortgage. As to the smaller bills of goods included in this suit, the statement must have been made prior to March 4, which would be forty-four days prior to the date of the mortgage of the defendant. Therefore it will be

safe to say that these goods were in the possession of the purchaser, Clark, openly and notoriously, and for the purpose of retail sale, by the consent and with the approval of the plaintiff, for three months prior to the time that they made any attempt or gave any notice of their intention to rescind such sale and herein is the distinctive difference between the case at bar and the case of *Schulein v. Hainer,* (Kan.) 29 Pac. 171, which is cited by the plaintiff in support of its theory in this case, which is a strong case, the *dicta* of which seems to support plaintiff's theory. But a reading of that case will show a strong presumption, at least, that in that case the plaintiff was chargeable with no laches. The precise dates are not given, but a fair presumption from a reading of the case would indicate that the plaintiff there who sought to rescind the sale acted promptly. We do not believe that it is the theory of the law that a plaintiff who has sold goods and put them in the possession of a party, and allow him to have the open and notorious possession thereof, for a long period of time, and after other and more vigilant creditors have taken possession of the goods, under a *bona fide* sale, even though the consideration may have been a pre-existing debt, can then be allowed to come in and rescind such sale, and recover the proceeds of said goods, as against the rights of said creditors. It is a matter of familiar knowledge that wholesale houses do business upon credit, and rely largely upon the statement of their customers as to their financial ability and standing. These are chances which every wholesale house takes, and as they exist in the nature of things, there is no particular equitable reason why in a given case one creditor who is on the ground earlier, and gets his claim paid or secured, should be required to surrender his advantage to a less diligent creditor. In the case at bar

the debt of the defendants in error was just as valid and binding as that of plaintiff in error. They were as much entitled to be paid as plaintiff in error, and the goods which they sold to the debtor were just as valuable to them as plaintiff in error's goods were to the plaintiff in error. They had the same right to be diligent in their efforts to collect. as the plaintiff in error had, and if by superior diligence they succeeded in having their claim paid, there is no peculiar or equitable rule by which they should be obliged to subordinate their own claim to that of the plaintiff in error. The position which plaintiff in error has taken in this case, and which it seeks to establish, does not appeal strongly to equity. It strikes the ordinary observer as being a mere attempt on the part of the plaintiff in error to compel defendants in error to surrender an advantage which they gained by superior diligence, and to suffer a loss which in the nature of things naturally falls upon the plaintiff in error.

One of the qualifications which the law always puts on the right of rescission is that it must not be unjust. It would be unjust to the defendant in error here who had taken a mortgage to secure a *bona fide* debt, and pursuant to that purpose had sold the goods described in said mortgage to a third party, to now surrender up the proceeds. In the case at bar it is apparent from the pleadings that the defendants in error were simply one of several creditors who took mortgages upon the stock of goods ·owned by Clark, including the boots and shoes claimed by the plaintiff. After they had cancelled their debt with the proceeds of said sale and in view of the fact of the long possession by Clark, notorious and uninterrupted, and in view of the tardiness of the plaintiff in error in asserting its right of rescission, we cannot think but that it would be an injustice to the

defendants in error to compel them to respond in damages to the plaintiff in error, as a result of the plaintiff's own negligence and delay.

For the reasons herein expressed, we think that the action of the district court in rendering judgment in favor of the defendant on the pleadings, and against the plaintiff for costs was right, and the same is hereby affirmed.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.