BRANSON v. BRANSON.

No. 29590. Feb. 17, 1942.

Rehearing Denied March 24, 1942.

*123 P. 2d 643.*

Edwards & Robinson, of Oklahoma City, for plaintiff in error.

Fred P. Branson, of Muskogee, for himself.

Hal C. Thurman, Harold C. Thurman, and Joseph G. Rucks, all of Oklahoma City, for defendant in error.

DAVISON, J. This is an action for separate maintenance and alimony without divorce. It is presented on appeal from a judgment of the district court of Oklahoma county entered on the 31st day of July, 1939, finding that Fred P. Branson, the husband of Madeline Branson, and defendant in the trial court, had abandoned her, and ordering and directing him to pay her the sum of $250 per month so long as they should remain husband and wife.

As in many other appeals in cases of this type, the record reflects that the estrangement of the parties has provoked or been attended by considerable adverse feeling. Both of the parties have exhibited a tendency to delve into

and expose the intricate details of their former association and each is disposed to attribute the unfortunate features of their present position to the alleged formerly dominant influence of the other. A particularized account of the various transactions between the parties and the motives which prompted their respective actions and attitudes would become tedious reading to those investigating this opinion for legal guidance. Such an account will therefore be avoided. However, reference to the salient facts reflected by the voluminous record now before us is essential to the determination of this appeal.

The defendant is a lawyer. He is 61 years of age and has had a very active life. He has attained a degree of prominence professionally and politically. He has also engaged in business, principally by dealing in properties connected with the production or potential production of oil. His efforts have from time to time been rewarded by financial success. He has also sustained losses. There has consequently been some fluctuation in his financial worth.

In 1904 he was married to Eula Jeans. In 1922 he was elected to state office. In 1923 he moved from Muskogee to Oklahoma City and there entered the duties of his office. He and his wife, Eula Jeans Branson, established their home at the Skirvin Hotel in Oklahoma City, although the defendant retained his legal residence at Muskogee.

Soon after his arrival in Oklahoma City the defendant, then 42 years old, employed the plaintiff, an unmarried woman, 30 years old, to do stenographic and secretarial work in his office. This arrangement continued until 1929. During this period of time an emotional attachment developed between the plaintiff and defendant which resulted in a dissolution of the marriage relation between the defendant and Eula Jeans Branson by decree of divorce granted by the district court of Muskogee county on January 30, 1930. Under the statutes of this state remarriage of the parties to a divorce action, except to each other, is

forbidden for a period of six months subsequent to the granting of the decree (sec. 674, O. S. 1931, 12 Okla. St. Ann. § 1280). On February 24, 1930, the parties to this action procured a license to marry in the State of New York and a marriage ceremony was there performed by a justice of the peace. One month later another ceremony was performed in New Orleans, La., by an official of the church to which the plaintiff belonged, this to satisfy the religious beliefs of the plaintiff who, with the active aid and assistance of the defendant, had previously secured her church's approval of the contemplated marriage.

Thereafter the parties returned to Oklahoma City, where they subsequently openly conducted themselves toward each other as man and wife until differences developed which resulted in their separation.

Incidentally, in this connection the defendant, in the trial of the case in the court below, denied the existence of the marital relation between himself and the plaintiff and advanced the theory that the marriages, or attempted marriages, between the parties to this action were void because of the statutory inhibition above mentioned.

Regardless of its initial infirmities, such a marriage may ripen into a valid common-law marriage. Mantz v. Gill, 147 Okla. 199, 296 P. 441, and cases therein cited. In this case the trial court held the parties had succeeded in creating a valid marriage and the soundness of that determination is not questioned on this appeal.

The parties separated in the spring of 1936. The trial court concluded that the defendant's acts and attitude in connection with the separation amounted to desertion without cause. After the separation the defendant continued to support the plaintiff by paying her monthly from $175 to $225 until March of 1939, when he formally advised her that he would no longer do so. This advice was communicated by letter dated at Hot Springs, Ark., on March 14, 1939, which contained the following pertinent excerpt:

". . . I have paid out all the money I can under the settings. I will be unable to send a check the first of April or thereafter. Your advisors have destroyed your personal judgment and me in my desire to build any estate for you or myself. My property is merely potential and I cannot work it out under this situation. . . ."

Subsequently, he did send a check which reached plaintiff on March 30th. The plaintiff says that this check was sent as a subterfuge to lull the plaintiff into a feeling of security so that she would not institute this action and obtain service of summons while the defendant was in this state on a trip which it was necessary for him to make about that time. In this connection, plaintiff points out that payment of the check was subsequently stopped. This action for separate maintenance and alimony without divorce was promptly instituted. The petition was filed on April 1, 1939. Thereafter, issues were joined. The cause was tried in July, 1939. Special findings of fact and conclusions of law were, upon request, made by the trial court, and the judgment heretofore referred to was entered.

Additional facts essential to a proper treatment of the questions preserved for review will be interpolated in our discussion of the legal principles applicable to the case.

The defendant, appearing before this court as plaintiff in error, challenges the sufficiency of plaintiff's pleading and proof. He presents his case under three "points," which he urges collectively. His points are stated by him as follows:

"First, that the petition states no cause of action;

"Second, the elements of the alleged cause of action must be plead;

"Third, had the petition complied with the rule and stated a cause of action there was no evidence to warrant the finding of the trial court."

The defendant calls our attention to section 678, O. S. 1931, 12 Okla. St. Ann. § 1284, by which the Legislature has made specific statutory provision for the maintenance of a suit for alimony without a divorce "for any of the causes for which a divorce may be granted." The defendant takes the position that the statute is exclusive and precludes the maintenance of this action upon any ground for any cause other than those enumerated by statute as basis for divorce. He urges that in order to maintain this action for alimony, plaintiff's pleading must allege and her proof must establish some one of the grounds for divorce enumerated in section 665, O. S. 1931, 12 Okla. St. Ann. § 1271. Among the stated causes is "abandonment for one year." In this connection we have already noted that the trial court's decision was based primarily upon abandonment of the plaintiff by the defendant. The defendant takes the position that a separation mutually agreed upon between the parties does not constitute abandonment, and argues that if at any time within one year after an abandonment occurs, the abandoned spouse agrees thereto, she can no longer assert the continuation of the abandonment as a basis for divorce. In conjunction with this argument defendant calls our attention to certain correspondence from his wife which he interprets as a concurrence in or consent to the separation. He claims that by virtue of this correspondence his wife cannot assert that the abandonment continued for one year as a basis of her suit for alimony, and that the same must therefore fail.

One of the fatal weaknesses in this argument (and the only one that need be here considered) is that it proceeds upon the theory that the grounds for the institution and maintenance of a suit for alimony alluded to "by reference" in the statute (sec. 678, O. S. 1931, supra) are not exclusive. It ignores the important consideration that independent of the statute the wife can enforce a right to support and maintenance. This court has already so stated. Williams v. Williams, 103 Okla. 194, 229 P. 797.

It is important to bear in mind at all times in connection with our discussion

of the power of the court to grant relief independent of the statute that this is an action for separate maintenance and not an action for divorce. The statutes play a more important part in a divorce action than in an action of this character. This for the reason that, while the power of courts to grant divorces is of statutory origin, 19 C. J. 23, the power to grant separate maintenance, according to the majority rule, exists in equity, independent of any statute. 30 C. J. 1078. There are a few states that, having no statute on the subject, deny the existence of the power in equity, and a few other states which, having statutes, deny its existence on the theory that the equity power is superseded by statutory enactment, but generally, in such states, the statute is broad enough to comprehend all relief which could have formerly been granted in equity. See cases collected in notes, 30 C. J. 1078, 79, 80.

Oklahoma does not fall within the latter class. As emphasized by the defendant, our statute is not sufficiently broad to compel support by a husband who has abandoned his wife unless the abandonment has continued for one year. As far as relief under the statute is concerned, such an abandoned wife can starve and dress in rags for a year. This, although she had throughout the year an unquestionable right to support which, as defendant asserts in substance, the courts are impotent to enforce. No such weakness exists in equity independent of the statute and no such impotence exists in the courts of this state under the majority rule and the previous expressions of this court.

Apparently the plaintiff in this case is not threatened with the fate above suggested, but we are here dealing with basic rule which must be applied to others less fortunately situated.

In Williams v. Williams, supra, we said:

"It is not only the duty, but every husband is bound to maintain and support his wife when she has no means for her support independent of that of her husband, and independent of the alimony statute she may .enforce this duty either at common law or under sections 6605, 6606, and 6607, O. S. 1921, and when she lives apart from her husband without fault, she may contract for necessities and have the same charged to his credit or account and for which he will be compelled to make compensation."

The foregoing excerpt was subsequently quoted with approval by this court in Walker v. Walker, 140 Okla. 1, 282 P. 361, and the continued existence of the duty to support which the judicial power enforces was mentioned in Doggett v. Doggett, 85 Okla. 90, 203 P. 223.

It is true that the opinion in Williams v. Williams, supra, does not reflect an exhaustive research upon the point, but if such a research had been made, the rule would have been found to be well supported by judicial precedent in a majority of jurisdictions.

Textwriters who have made such a research are in accord on this point. In 30 C. J. 1078 et seq., it is said:

"While the early English rule, followed by a number of courts in this country, is to the contrary, the weight of modern authority is to the effect that a court of equity has original and inherent, and not merely incidental or statutory, jurisdiction to grant the wife alimony or an allowance for separate maintenance and support in an independent suit therefor in which a divorce or separation is not prayed for. Various grounds or reasons for the rule are assigned, such as the unquestioned duty of the husband to support the wife; the inadequacy of the remedy at law; the lack of jurisdiction of a court of law to entertain a suit by the wife against the husband; the policy of the courts to discourage rather than encourage divorces; *and the injustice of requiring the wife to seek a divorce in order to obtain separate maintenance and support as an incident thereto where she does not desire, or does not have grounds for, a divorce, or where a statutory period must elapse before she can obtain a divorce and during the interim she is without an adequate remedy and the husband may fraudulently dispose of his property or remove it from the juris-*

*diction. A statute making it a criminal offense for the husband willfully to neglect to support his wife does not destroy or defeat the general powers of a court of equity to entertain a suit by the wife for alimony or separate maintenance."* (Emphasis ours.)

In 27 Am. Jur. 13, it is said:

". . . According to the majority view, it is not necessary, to sustain a suit for alimony, support, or maintenance, that statutory grounds for divorce exist, and in support of this view it may be pointed out that in many cases where a wife is not able to obtain a divorce, the circumstances may be such as to render it unjust if she is denied all relief. . . ."

Similarly, it is said in 27 Am. Jur. 10:

"The mere fact that statutory provision has been made for awarding alimony when divorces are granted does not exclude, by implication, any jurisdiction the courts may have had to enforce the fulfillment of that obligation in an action independent of a proceeding for a divorce; for it cannot be presumed that the Legislature, while carefully providing for the continuance of the obligation of maintenance after divorce, intended thereby to cut off any jurisdiction which might be in the courts to enforce that obligation while the bonds of matrimony still existed."

In 1 R.C.L. 879, the rule is mentioned in the following language:

". . . In a very decided majority of the states it is now the settled rule that the jurisdiction of the equity courts to award alimony is not merely incidental to suits for divorce or separation, but is inherent, and that alimony may be awarded in an independent suit therefor. . . ."

A multitude of authorities are cited in support of foregoing texts. (Cases are also mentioned which support the minority rule, sometimes alluded to as the "old English view".) These collected cases include decisions from states where no statute has been enacted dealing with the subject, states where statutes have been enacted which are as comprehensive as the equitable power, and states like Oklahoma (and Kansas from which our statutes were taken) where statutes, narrower in scope and application than former equitable powers, have been enacted.

It is, of course, apparent that an additional question exists in jurisdictions of the latter class. In connection with statutes of limited application it may be urged that by implication the Legislature intended to exclude relief in all cases not covered by the statute. In other words, the maxim of "expressio unius est exclusio alterius" may be said to apply. But it must be remembered that this maxim is an aid to determining legislative intent rather than an absolute rule. As said in 25 R.C.L. 983:

". . . The maxim is not of universal application, but is to be applied only as an aid in arriving at intention and not to defeat the apparent intention. . . ."

Thus the reasons heretofore mentioned in quotations from texts are still of compelling importance in requiring recognition of the continuing existence of equitable jurisdiction supplementary to our limited statutory enactment on the subject. It is not to be presumed that the Legislature in making an effort to provide for the fulfillment of an unquestionable marital duty intended to abrogate by implication pre-existing remedies not covered by the statute enacted.

As is said with reference to statutes and their effect upon common-law remedies in 25 R.C.L. 1058:

"An existing common-law remedy is not to be taken away by a statute unless by direct enactment or necessary implication. A statute which enlarges the remedy which the common law affords and extends it to cases for which there was no remedy at common law does not take away the common-law remedy; *when a duty is required and no remedy provided for its breach, the remedy is by common-law procedure.* Where a statute prescribes a remedy for a matter that is actionable at common law, without excluding the common-law remedy, either expressly or by necessary impli-

cation, the statutory remedy is regarded as merely cumulative and either the common law or the statutory remedy may be pursued. . . ."

Further inquiry into the theory of statutory construction seems unwarranted in this case in view of the general rule heretofore mentioned, the previous expressions of this court as above quoted, and the expressions of the Supreme Court of Kansas (from which state the statute under consideration was taken), which we shall now consider.

In connection with the decisions of the Kansas court, some confusion has arisen over the early case of Birdzell v. Birdzell, 33 Kan. 433, 6 P. 561. The defendant is of the opinion that the case holds the statutory remedy provided by section 678, O. S. 1931, 12 Okla. St. Ann. § 1284, is exclusive and precludes resort by an abandoned spouse to any common-law or equitable remedy. This view of the decision is probably derived from a revisor's note made in connection with the section as contained in Revised Laws 1910 (sec. 4975, R. L. 1910). The revisor cited the case to hold that "Alimony without divorce may be obtained only for same cause for which divorce is granted."

This court, however, disagreed with the revisor, and in Williams v. Williams, supra, cited the case (Birdzell v. Birdzell, supra) to approve the rule heretofore quoted and the continued existence of common-law and equitable remedies supplementing the statute.

There is language in the opinion (Birdzell v. Birdzell, supra) which lends some color to both views. At one point it is said:

"It will be seen that alimony without a divorce may be obtained only for the same causes for which a divorce may be obtained. . . ."

But at a later point in the same paragraph of the opinion it is also said:

". . . The husband is still liable for her support. And there are better remedies to enforce this support than the strange one resorted to in the present case. There are all the common-law remedies. . . ."

As a matter of fact, the opinion does not lend unqualified support to either view. It does not really pass on the question of whether relief independent of the statute can be granted. It merely holds, as far as this point is concerned, that the jurisdiction of the court to grant relief, independent of the statute, had not been invoked.

The apparent discrepancy in the language of the opinion, which caused the annotator of the 1910 Revised Laws and this court to arrive at different conclusions as to the view of the Kansas court on the question now before us, caused a similar confusion on petition for rehearing in connection with the case, and the Kansas court clarified the matter by a supplemental opinion on rehearing which both the revisor of the 1910 Code and this court in Williams v. Williams, supra, and also the defendant herein seem to have overlooked. Because of the importance sought to be attached to the opinion, we quote the supplemental opinion in full as it appears in Birdzell v. Birdzell, 35 Kan. 638, 11 P. 907:

"This is an application for a rehearing made by the defendant in error. We have carefully examined all the authorities presented, and are satisfied with the law as declared in this case in 33 Kan. 433, S. C. 6 P. 561. The application will therefore be denied.

"Counsel for defendant in error allege that Birdzell has abandoned his wife without providing any support; that she is insane and destitute; and that it is gross injustice that the husband should not be compelled to make some provision out of the money that came to him through his wife for her maintenance and comfort. Counsel also contend that, independent of any statute, the district court, as a court of equity, should grant relief in the case. The petition filed in this case is in the form of an ordinary action for divorce and alimony under the provisions of the statute. Sections 639-649, Civil Code.

*We have not decided, and have not intended to decide, that the unquestioned duty of the husband to support his wife may not be enforced by a court of equity upon proper proceedings commenced therefor. If the petition heretofore filed be amended so as to show that Birdzell has abandoned his wife, and separated himself from her without providing any sufficient support, and other facts are set forth showing that the wife has no adequate or sufficient remedy under the statute, then a case will be presented as to the jurisdiction of the district court, as a court of equity,* to grant salutary relief independent of the statute relating to divorce and alimony. When such a case is before us, it will be time enough for us to decide whether there is any remedy for such wrongs by way of an allowance for suitable maintenance and support out of the estate of the husband." (Emphasis ours.)

Thus, Birdzell v. Birdzell, supra, in no wise supports the view that the statutory remedy is exclusive and that relief in equity cannot be accorded independent of the statute.

The real view of the Kansas court is more clearly expressed in the later case of Wohlfort v. Wohlfort, 116 Kan. 154, 225 P. 746, 40 A.L.R. 538. The holding of the court on this point is expressed in the first paragraph of the syllabus. It is said:

"When a husband abandons his wife without just cause she may maintain a suit for separate maintenance, though the abandonment has not been for a period sufficient to constitute a cause for divorce."

In the body of the opinion it is said, after quoting the Kansas statute:

"It will be noted that the statute makes cause for divorce available as the basis for an action for separate maintenance, but does not limit such an action to such causes. Separate maintenance will be granted when a cause for divorce is alleged and shown, but the duty of a husband to support his wife is continuous, and if he abandons her, she does not have to wait a year, until the abandonment has ripened into a cause for divorce, before she can maintain an action for separate maintenance. It would be a peculiar hiatus in the law to hold that a partial failure of marital duty (Smith v. Smith, 22 Kan. 699), amounting to gross neglect of duty, would support such an action at once, but that a total failure of such duties would not support such an action unless total failure had continued for a year. Fortunately, no such hiatus exists."

In this connection it is appropriate to mention that in the case of Anderson v. Anderson, 140 Okla. 168, 282 P. 335 (a second review of the same case, see Anderson v. Anderson, 131 Okla. 95, 267 P. 621) the Kansas case of Wohlfort v. Wohlfort, supra, was mentioned with disapproval on some one of the several points therein involved. Just which part of the Wohlfort opinion we intended to disapprove is not specifically stated. We shall not herein analyze the opinion in the Anderson Case further than to point out that the disapproval of the Wohlfort Case did not involve the point on which it is cited here. We say this advisedly upon two considerations: First, The decisive issue in the Anderson Case and the basis of the decision was that the courts of this state do not have jurisdiction in rem in an action for separate maintenance to make a division of property between separated spouses both of whom are nonresidents, and between whom a divorce action is pending in the courts of another state.

That issue is not here involved and the connection is too remote to make it seem probable that in the Anderson Case we had in mind the feature in the Wohlfort Case here involved.

Second. If we had been intending to repudiate the Wohlfort Case on the question here involved, we would certainly have first corrected our own previous corresponding expression in Williams v. Williams, supra. It is clear that the Williams Case was not overlooked in the Anderson Case, because *it is therein cited twice with approval* on other points.

As an additional consideration it may be observed that Anderson v. Anderson, supra, was decided on September 24, 1929, and rehearing denied on November 26, 1929. While it was pending on rehearing, Walker v. Walker, supra, was decided November 19, 1929, expressly approving the rule in the Williams Case. The Walker Case was concurred in by the author of the opinion in the Anderson Case.

It is thus obvious that the Wohlfort Case is not, in this jurisdiction, disapproved by the Anderson Case on the point here under consideration, that is, the power of a court, independent of the statute (sec. 678, O. S. 1931), to grant separate maintenance at the request of a wife who has been abandoned, even though the abandonment has not been continuous for one year.

In this case it is certain that the husband and wife have been separated since 1936, and that since March of 1939 the husband has refused to support his wife. Assuming, as we do for the present, that the trial court rightly concluded that he abandoned her without sufficient cause, it is unnecessary under the law to scrutinize the evidence to ascertain the existence or nonexistence of some *mental attitude* on the part of the wife which might have interrupted the legal effect of the abandonment within one year after the commencement thereof.

We conclude, as we previously did, and as did the Kansas court, and as a majority of other courts have concluded, when confronted with the precise question, that an action for alimony and support may be maintained by a wife whose husband has abandoned her and is refusing to support her even though such abandonment and nonsupport has not been continuous for one year next preceding the commencement of the action.

The defendant also questions the soundness of the trial court's conclusion in determining that he was guilty of abandonment at all. He calls our attention to authorities holding that abandonment must be intentional on the part of one spouse and against the will of the other. He explains his continued absence from the place chosen by the parties to reside by calling attention to the requirements of his business and asserts the absence of proof of intent to abandon on his part. We have carefully examined the proof on these points and conclude that the trial court was justified in deciding, from the acts and conduct of the defendant, the existence of the intent to abandon, and that the abandonment was against the will of the plaintiff. We shall not indulge in a review of the numerous evidentiary facts justifying this conclusion.

We have deferred to this point a discussion of the sufficiency of plaintiff's petition. This pleading is subject to some criticism, but not because of its brevity. The defendant asserts that it does not properly plead abandonment. An examination of the pleading discloses that it could have been made more explicit and direct on this point. The method employed in pleading is recitational and the essential averments of abandonment are intermingled with other matters not directly connected therewith.

Our statute (second subdivision of section 198, O. S. 1931, 12 Okla. St. Ann. § 264) requires that the petition contain "A statement of the facts constituting the cause of action, in ordinary and concise language. . . ." One of the purposes of the Code was to make the rules of pleading less technical and stringent, and the tendency of this court has been to liberally construe and apply it so that its purpose will be accomplished. Hawkins v. Overstreet, 7 Okla. 277, 54 P. 472. Ordinarily, a direct allegation of an ultimate fact may be excused when the fact otherwise sufficiently appears or is necessarily implied from other averments in the petition. Revel v. Pruitt, 42 Okla. 696, 142 P. 1019.

Thus, although the plaintiff did not in her petition specifically state that the defendant abandoned her, she pleaded

the facts from which such abandonment was obviously apparent and necessarily inferred with sufficient clarity to advise court or counsel of the basis of her complaint. Nor do we find any indication in the record that either court or counsel was misled. Certainly the point was closely tried by the defendant, indicating careful previous preparation. The complaint directed at the sufficiency of the petition is without substantial merit.

In connection with the sufficiency of the pleading and proof to show grounds for relief, the plaintiff asserts that ample averments are contained in her pleading and sufficient evidence offered in support thereof to justify the character of relief herein granted on the grounds of "gross neglect of duty" (the ninth ground for divorce enumerated in section 665, O. S. 1931, 12 Okla. St. Ann. § 1271).

While our determination of the adequacy of the pleading and proof in connection with abandonment dispenses with the necessity of analysis of the petition and evidence upon this point, a review of the record discloses that defendant's initial departure, his continuance thereof, his subsequent cessation of support, and his declaration of intention not to continue or resume any further payments for that purpose, considered in conjunction with his ability to make such payments at least in a lesser amount, was pleaded and proved with sufficient clarity and exactness to have justified the trial court's decision to grant relief on the grounds of "gross neglect of duty." See Hayes v. Hayes, 178 Okla. 206, 62 P. 2d 62; McGee v. McGee, 43 Okla. 396, 143 P. 178; Lee v. Lee, 38 Okla. 388, 132 P. 1070.

Defendant next points out that this is a cause of equitable cognizance and urges that relief should be denied plaintiff because she did not come into court with "clean hands."

His argument on this point proceeds upon the theory that she exercised a dominant influence in connection with the courtship which had its inception during his prior marriage, and that she thus "broke up" that marriage. (The trial court found the parties mutually at fault in this respect.) The asserted situation presented is not appropriate for an application of the equitable maxim that "he who comes into equity must come with clean hands."

Certainly, neither a trial court in exercising its equitable jurisdiction nor this court in reviewing a case of equitable cognizance on appeal would lend aid or assistance to the parties in pursuing an extra-marital courtship. But we are not here called on to do so. The courtship is over. Defendant's former marriage was dissolved in 1930. The parties to this action have by mutual effort and conduct entered into a valid marriage contract, and we are here concerned with the rights, duties, and obligations growing out of that contract, principally with the duty and obligation of the husband to contribute to the wife's support.

Thus it is said in 19 Am. Jur. 328, with reference to the application of the maxim invoked:

"The wrong which may be invoked to defeat the suit must have an 'immediate and necessary relation' to the equity which the complainant seeks to enforce against the defendant or it must 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication'. If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute matter of defense."

Defendant's position in this respect is untenable.

The defendant also complains that the trial court erred in fixing the amount of alimony that he should pay at $250 per month. He asserts that the "amount fixed was inequitable, unjust and without evidence to warrant it." This complaint presents one of the most difficult questions in connection with this appeal.

The amount which should be allowed is not determined by any fixed standard,

but rests in the first instance in the sound judicial discretion of the trial court. Walker v. Walker, supra; 17 Am. Jur. 467. The absence of a fixed standard does not mean, however, that elements and factors appropriate for consideration have not been recognized by the courts. On the contrary, such elements and factors have been recognized and enumerated by the courts, but the degree of importance to be attached to any given factor depends upon its relation to other factors found to exist in the case, and every case becomes and is an individual problem.

The elements appropriate for consideration in determining the amount of alimony in a suit for separate maintenance and alimony are in general the same as those which obtain in the allowance of alimony in connection with a divorce.

Upon this subject it is said in 27 Am. Jur. 22, that:

"The amount of a provisional allowance in a suit for alimony, support, or maintenance, without divorce, is usually arrived at in the same manner as is the final allowance, by considering the property and income of the husband, the property and income of the wife, their joint property and income, their ages and condition in life, their ability to care for themselves, whether they are subjected to the support and education of minor children, and indeed, all the circumstances shown which affect the propriety of the allowance. The amount of allowance for suit costs and counsel fees should be arrived at with due regard for the character of the litigation, the services necessarily to be performed, probable expenses to be incurred, and all other circumstances which the court can see, tending to lessen or increase the expense of litigation."

And in 27 Am. Jur. 23:

"The general rule is that the amount of alimony or maintenance awarded a wife in a suit independent of divorce must be reasonable, equitable, and just under all the circumstances of the case, among which are the necessity of maintenance of children whom the wife is required to maintain, the husband's circumstances and situation generally, his ability to pay, the wife's property, social position, health and circumstances, the general family history and manner of life of the parties prior to and since their separation, and also the delictum of the husband as disclosed by the evidence. Misconduct of a wife, not sufficient to constitute a defense to her suit for separate maintenance, may be considered in fixing the amount of the allowance.

"While a wife may not be required to exhaust her resources before bringing a suit for separate maintenance, the amount of her income or property will affect, at least, the amount which she will recover. . . ."

See, also, Walker v. Walker, supra.

With special reference to the allowance of alimony in divorce cases, but also worthy of consideration herein, it is said in 27 C.J.S. 950-951:

". . . The courts do frequently enumerate some of the factors that should enter into consideration of the question and, without referring exclusively to either one of the spouses, have included in such enumerations the financial circumstances of the parties, with special reference in some instances to their estates, incomes, debts, obligations, or necessities; the contributions of each to the joint or accumulated property; and with special reference to their ability to earn, and their probable future prospects; their sex, age, health, and ability to labor; their station in life; their children, if any, and the care and disposition of them; the duration of the marriage. . . ."

See, also, Dresser v. Dresser, 164 Okla. 94, 22 P. 2d 1012. In 27 C.J.S. page 960, it is said:

"The wife's capacity, or lack of capacity to earn is a circumstance to be considered in determining the question of alimony, particularly where the husband has no estate and must pay alimony out of his earnings. The law does not contemplate an award sufficient to support the wife in absolute idleness where she is not sick or disabled or too old to perform hard work. . . ."

When the trial court has exercised its discretion in determining the amount of alimony to be allowed, this court does not disturb its decision on the point unless an abuse of discretion occurs. Walker v. Walker, supra. However, since the cause is one of equitable cognizance, it is appropriate that we weigh the evidence and evaluate the factors in determining whether it involves a proper exercise of judicial discretion by the trial tribunal. Notice Dresser v. Dresser, supra.

As we have noted in Walker v. Walker, supra, the financial condition of the parties is an appropriate element of consideration. This, of course, is closely affiliated with their earning capacity.

The defendant was at one time a man of considerable wealth. However, according to his testimony, the value of his holdings has greatly depreciated. In this connection it is appropriate to observe that his accumulated wealth was the result of his own efforts rather than the joint efforts of the parties hereto. See Dresser v. Dresser, supra. The trial court found that he had an earning capacity of $6,000 per year. The defendant questions the sufficiency of the evidence to support this finding. An examination of the record discloses considerable testimony touching upon this subject, and while in many respects it is indefinite and unsatisfactory, our examination discloses that it was sufficient. It may be noted in this connection that the testimony related to a subject peculiarly within the knowledge of the defendant, and that the evidence on the point was largely in control of the defendant himself. From this an inference may be drawn that more implicit evidence on the subject, if favorable to his cause, would have been produced. 20 Am. Jur. 189 and 190. Of course, this adverse inference cannot be indulged to supply an absence of affirmative or substantive proof (20 Am. Jur. 195), but there is no such absence of proof in the cause now before us.

We therefore accept as substantially accurate the figure of $6,000 determined by the trial court.

The plaintiff also has some property of a substantial nature which she has acquired from the defendant, although her testimony reflects that her income from the same is negligible. It is therefore not a major factor in determining the question here presented.

It likewise appears that she has an earning capacity. She is a skilled private secretary and was earning $150 per month, or at the rate of $1,800 per year, prior to her marriage. She did not continue her occupation after her marriage and it may be assumed that there has been some diminution of her capacity to earn because of that factor, as well as because of advancing years. She had at the time of the trial indicated her intention and confidence in her own ability to return to work by making some effort to locate employment. In this connection we must remember in fairness to the defendant that he is also 12 years older and according to human experience his ability may likewise be affected by advancing age.

We have already noted that the wife's earning or ability to earn may properly be considered upon this question. While many cases may arise in which the earning capacity of a wife should not be considered, we think it a very proper element in this case in view of the comparatively short time that the parties lived together as man and wife (from 1930 to 1936) and in view of the absence of children to require her attention.

After a careful consideration of the evidence and peculiar circumstances of this case, we have concluded that this is a case in which the ability of the wife to earn as well as that of the husband should be considered. We likewise conclude that the trial court failed to exercise proper discretion in fixing the amount of alimony by failing to take that factor into consideration. The trial

court has allowed plaintiff $3,000 per annum in monthly payments. The allowance was improper in that it failed to take into consideration plaintiff's earning capacity, and will be reduced to $1,200. The plaintiff will therefore receive $100 per month as alimony.

The judgment of the trial court is modified, and as so modified is affirmed.

CORN, V. C. J., and OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. WELCH, C. J., and RILEY and GIBSON, JJ., dissent.

---

RILEY, J. (dissenting). An action for separate maintenance may be maintained only for a cause for which a divorce may be obtained. Birdzell v. Birdzell, 33 Kan. 433, 6 P. 561, 52 Am. Rep. 539 (1885); 12 Okla. Stat. Ann. § 1284:

"The wife . . . may obtain alimony . . . without a divorce, . . . for any of the causes for which a divorce may be granted. . . ."

The origin of the right granted by the Oklahoma statute may be traced to the General Statutes of Kansas, 1889, paragraph 4762. Lewis v. Lewis, 39 Okla. 407, 135 P. 397; Poloke v. Poloke, 37 Okla. 70, 130 P. 535, Ann. Cas. 1915B, 793. Anderson v. Anderson, 140 Okla. 168, 282 P. 335, 74 A.L.R. 1231, nonresident wife may sue nonresident husband for alimony; Litowich v. Litowich, 19 Kan. 451, 27 Am. Rep. 145, residence for one year not being requisite to the statutory action for separate maintenance; Davis v. Davis, 61 Okla. 275, 161 P. 190; Walker v. Walker, 140 Okla. 1, 282 P. 361; West v. West, 114 Okla. 279, 246 P. 599. At the time of the adoption of the statute, the construction placed upon it was that alimony without divorce may be obtained *only* for a cause for divorce. Birdzell v. Birdzell, supra. Presumptively, the adoption of the statute was in view of the construction placed upon it. That was a reasonable construction, for if the right came by statute, the grant may carry limitation upon exercise of the right, and if the right was not a statutory grant but

existed independently under the common law (Bueter v. Bueter [1890] 1 S. D. 94, 45 N. W. 208, 8 L.R.A. 562), nevertheless, the state has an interest in maintenance of the institution of marriage and may, as it has by statute, restrict exercise of the right by granting to a defendant causes for denial of the exercise—"Either may make the same defense to such action as . . . to an action for divorce. . . ." (The statute, idem.) However, the power to grant a divorce is a statutory and not a common-law power. 19 C. J. 23, par. 28. See cases cited under note 8.

In Johnson v. Johnson, 57 Kan. 343, 46 P. 700 (1896), it was held error to allow a wife permanent alimony in the form of a quarterly allowance for the support of herself and minor child where it was found she was not entitled to a divorce.

In Anderson v. Anderson, supra (1929) this court held itself bound "by the interpretation placed thereon (the statute, supra) by the court of that state (Kansas) prior to its adoption." In the text of the decision, we rejected the decision in Wohlfort v. Wohlfort, 116 Kan. 154, 225 P. 746, 40 A.L.R. 538, now relied upon by the majority opinion, as well as Osman v. Osman, 86 Kan. 519, 121 P. 327, saying:

". . . inasmuch as this case was not decided until 1924, the rule stated does not apply."

Alimony without divorce is a legal device suitable to a temporary status and one that may end by reconciliation, death, or divorce. The payment may not be awarded in lump sum, but is continually subject to modification. Kusel v. Kusel, 147 Cal. 57, 81 P. 295; Doggett v. Doggett, 85 Okla. 90, 203 P. 223. The causes for alimony (or, in its narrower sphere, separate maintenance) are limited to the causes enumerated by statute for divorce. Section 665, O. S. 1931, 12 Okla. Stat. Ann. § 1271, enumerates the applicable causes.

Herein, the plaintiff approached, in pleading, three causes that would justify a divorce decree. They were (1)

abandonment for one year, (2) extreme cruelty (sixth cause), and (3) gross neglect of duty. But a petition must state facts constituting a cause of action in ordinary and concise language. Phelps et al. v. Halsell, 11 Okla. 1, 65 P. 340; Weems v. Melton, 47 Okla. 706, 150 P. 720; Liberty National Bank of Weatherford v. Lewis, 172 Okla. 103, 44 P. 2d 127. An examination of the petition filed herein discloses its inadequacy.

Abandonment, to be properly pleaded and proved for such a cause, must be abandonment for one year. Assuming desertion was sufficiently pleaded as existing for a time, that in itself is not sufficient; it must continue for the period of time stated and required by statute. That it did not exist from the time pleaded, to wit, the year 1936, is disclosed by the pleading that plaintiff maintained an apartment at defendant's request and at his expense in the year 1939. She testified that she raised no objection when defendant left their abode at the Skirvin Hotel on April 1, 1936, and on August 23, 1937, she wrote defendant indicating her agreement to anything that would make him happy. This agreement contemplated, of course, the continued marital status limited as it was to plaintiff's support. It is stressed by plaintiff's request from defendant for gift of a trip to Mexico City and to Alaska.

Lack of abandonment for one year is evidenced by the pleading that after the spring of 1936, defendant absented himself from plaintiff and their said residence *practically all the time* and *seldom* "communicated with plaintiff in any way and ceased to cohabit with the plaintiff. That he did not come to said apartment or in any other manner visit with the plaintiff or in any manner perform his marital duties *except* to send her an allowance of $225 a month," which was subsequently reduced to $200 per month.

Thus it is evident and in evidence that whatever desertion existed on the part of defendant, it did not develop into abandonment for the period of time required by statute for the reason that the third element of abandonment was not present; that element is nonconsent on the part of the one deserted. Plaintiff was agreeable to her status at the time of commencement of this action for support, provided that support continued. The three elements constituting abandonment are: Cessation of cohabitation, continued for the statutory period of time; (2) intentional on the part of the offending spouse not to resume cohabitation; and (3) nonconsent on the part of the abandoned spouse. 9 R.C.L. 140, p. 354.

The modifying words italicized in the text of plaintiff's pleading convert essential averments of an element of the cause into a mere reproachful complaint. Indubitably there is uncertainty and indefiniteness unconformable to statutory requirements in all pleading. Extreme cruelty as a cause is likewise insufficiently pleaded, for the reason that while the plaintiff alleged that while living at the Skirvin Hotel in the year 1936, defendant applied harsh and unbecoming language in addressing her, both in private and in public, causing her great humiliation and suffering, subsequent allegations of the petition effectively disclose condonement of whatever extreme cruelty was caused by defendant's acts, providing support was continued as it was.

Likewise, gross neglect of duty as a cause is insufficiently pleaded, for nowhere contained in the petition of plaintiff is there specific reliance had upon this ground. The nearest approach to it is a "collect" to be gathered from the whole plea, i.e., allegations that defendant did not cohabit with plaintiff or in any manner perform his marital duties except to support her.

It is apparent that under plea and proof, the plaintiff condoned all neglect of marital duties on the part of her spouse, if any, save and except the duty of a husband to support a wife.

Plaintiff's petition in the latter regard alleged that defendant advised plaintiff in the middle of March, 1939, of his intention to discontinue financial support of plaintiff. The averment continues in conclusion that a payment of support money continued down to the time of commencement of this action, but that the subsequent payment was subterfuge for the real purpose of "forestalling the filing of this action." Suffice it to say the payment was made on the 31st day of March, 1939, though the check in payment thereof was refused by plaintiff and protested by defendant when this action was instituted on the 1st day of April, 1939, and the tender thereof served no ulterior purpose as alleged. It may be that the offer did serve the purpose to show that the action was prematurely filed, for since the marital status of the parties, by condonement or otherwise, had reached the point where support money was in fact the only connection or disagreement between the parties, resort should not be had to this special proceeding to secure that which is given irrespective of the motives of donor, who has at least complied with all that the law may require of him.

That the defendant has done all that the law may require of him is evidenced by the fact that, by the majority judgment, he is required, under coercion, to contribute to the support of plaintiff $100 per month, whereas of his own volition, whether by subterfuge or otherwise, he sought to contribute and was contributing, until resort was had to law, the sum of not less than double the amount per month.

It is submitted that legally, arithmetically, and financially, this action and judgment labor in error.